# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0353
════════════

PRAIRIE VIEW A&M UNIVERSITY, PETITIONER,

v.

DILJIT K. CHATHA, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued December 6, 2011**

JUSTICE GUZMAN delivered the opinion of the Court in which JUSTICE HECHT, JUSTICE WAINWRIGHT, JUSTICE MEDINA, JUSTICE GREEN, JUSTICE JOHNSON, and JUSTICE WILLETT joined.

CHIEF JUSTICE JEFFERSON filed a dissenting opinion in which JUSTICE LEHRMANN joined.

The Texas Commission on Human Rights Act (TCHRA)[1] is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII),[2] that provides the framework for employment discrimination claims in Texas. At issue here is section 21.202 of the TCHRA, which obligates a claimant to file a complaint with the Texas Workforce Commission civil rights division (TWC) or the Equal Employment

---

[1] As we have previously observed, courts refer to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010). However, the Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division. *Id.* Throughout this opinion, we refer to Chapter 21 of the Labor Code as the TCHRA.

[2] Title VII is codified at 42 U.S.C. §§ 2000e to 2000e-17.

Opportunity Commission (EEOC) not later than the 180th day after the date an allegedly unlawful employment practice occurs. The term "occur" is not defined in the TCHRA, but we have previously interpreted it to mean when a discriminatory employment decision is made—not when the effects of that decision become manifest in later events. Our interpretation mirrored the United States Supreme Court's interpretation of Title VII until recently. But, in 2009, Congress enacted the Lilly Ledbetter Fair Pay Act (Ledbetter Act), amending Title VII to provide that a discriminatory pay decision occurs each time a paycheck is received and not just when an initial salary decision is made.[3] Thus, when a claimant files a discriminatory pay claim under federal law, the 180-day limitations period begins each time a claimant receives a paycheck containing a discriminatory amount. The Texas Legislature has not similarly amended the TCHRA.

As a matter of first impression, we must determine whether the federal Ledbetter Act applies to a claim brought under the TCHRA so that the 180-day limitations period begins anew each time a claimant receives a paycheck containing a discriminatory amount. Because Title VII and the TCHRA are no longer analogous where discriminatory pay claims are concerned, and because the Legislature—and not this Court—is the proper governmental branch to amend the TCHRA, we hold that the federal Ledbetter Act does not apply to a claim brought under the TCHRA. Thus, in accordance with the TCHRA and our precedent, we conclude that a pay discrimination complaint must generally be brought within 180 days of the date the claimant is informed of the compensation decision. We further hold that the 180-day filing requirement is a mandatory statutory requirement

---

[3] *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5.

2

that must be complied with before filing suit, and, as such, is a statutory prerequisite to suit under section 311.034 of the Government Code. Because the claimant here failed to timely file her complaint with the TWC, we conclude that her suit is jurisdictionally barred by section 311.034. We therefore reverse the court of appeals' judgment and render judgment dismissing the suit.

## I. Factual and Procedural Background

Respondent Dr. Diljit K. Chatha is a professor at Prairie View A&M University (the University). Chatha began employment at the University in 1987 and applied for a promotion from associate professor to full professor in 2003. She was initially denied the promotion but received it in 2004. At that time, she complained to the University that her salary was inequitable but was told there were no funds available for a salary adjustment. About two years after her promotion, Chatha filed a complaint with the EEOC and the TWC, alleging race and nationality-based pay discrimination. Chatha is of Indian national origin. In her complaint, Chatha marked the "continuing action" box, alleging discrimination between September 1, 2005 and September 26, 2005.[4] After receiving right-to-sue notices from the EEOC and the TWC, Chatha filed suit against the University in state court under the TCHRA. The University responded by filing a plea to the jurisdiction, asserting Chatha's TWC complaint was untimely filed pursuant to the 180-day

[4] A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent. *See* 42 U.S.C. § 2000e-5(e)(1); TEX. LAB. CODE §§ 21.201, .202; 40 TEX. ADMIN. CODE. § 819.41(c). If a state has its own employment discrimination laws, as Texas does, Title VII requires the EEOC to defer charges of discrimination it receives from employees in those states to state or local fair employment practices agencies for at least sixty days, in this case the TWC, so that attempts to resolve disputes can first be undertaken under state law. 42 U.S.C. § 2000e-5(c); *see Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991) (overruled on other grounds by *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010)). Thus, charges that are filed by Texas employees with the EEOC are contemporaneously filed with the TWC. 42 U.S.C. § 2000e-5(d).

limitations period under the TCHRA. *See* TEX. LAB. CODE § 21.202. The University specifically alleged that Chatha was aware of the alleged discriminatory salary in 2004, yet failed to file a complaint until 2006. Chatha responded that the federal Ledbetter Act applies to a discriminatory pay claim brought under the TCHRA because one of the TCHRA's purposes is to execute the policies of Title VII. *See id.* § 21.001(1). The trial court denied the University's plea.

The University brought an interlocutory appeal, *see* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), and the court of appeals affirmed, holding that the Ledbetter Act applies to claims brought under the TCHRA, and Chatha's claim was therefore timely because she received a paycheck containing an alleged discriminatory amount within 180 days of the date she filed her complaint with the TWC. 317 S.W.3d 402, 404, 407. In reaching this decision, the court of appeals relied on (1) the general purposes provision of the TCHRA, and (2) two federal district court decisions that had applied the Ledbetter Act to the TCHRA. *Id.* at 407. We granted review to determine whether the Ledbetter Act applies to a pay discrimination claim brought under the TCHRA.[5]

---

[5] We have jurisdiction over this interlocutory appeal pursuant to Texas Government Code sections 22.001 and 22.225 because the court of appeals in this case held differently from a prior decision of another court of appeals on a question of law material to the resolution of this case. *See* TEX. GOV'T CODE §§ 22.001(a)(2), 22.225 (c); *compare* 317 S.W.3d at 409, *with, e.g.*, *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 83–84 (Tex. App.—Fort Worth 2003, pet. denied) (concluding that pay discrimination occurs when an employee is informed of the discriminatory pay, not when the last discriminatory paycheck is received).

4

## II. Analysis

### A. Legal Framework

The TCHRA was "enacted to address the specific evil of discrimination and retaliation in the workplace," as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII. *See City of Waco v. Lopez*, 259 S.W.3d 147, 153–55 (Tex. 2008). Although from its inception the TCHRA was not an exact replica of Title VII, both the TCHRA and Title VII similarly define unlawful employment practice,[6] and as part of each act's administrative process impose a strict 180-day statute of limitations for filing an employment discrimination complaint with the appropriate governmental agency, running from the date the alleged unlawful employment practice occurs. The TCHRA provides:

(a) A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.

(b) The [TWC] shall dismiss an untimely complaint.

TEX. LAB. CODE § 21.202.[7] Prior to the federal Ledbetter Act's enactment in 2009, Title VII and the TCHRA contained virtually identical language concerning the 180-day limitations period.

---

[6] *Compare* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."), *with* TEX. LAB. CODE § 21.051 ("An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.").

[7] Similarly, Title VII provides that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1).

Although we have always considered the TCHRA's plain language and our precedent in interpreting the TCHRA, *see, e.g.*, *Caballero v. Central Power & Light Co.*, 858 S.W.2d 359, 359–61 (Tex. 1993), we have looked to federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language, *see, e.g.*, *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam). Therefore, we previously looked to federal case law in interpreting the 180-day limitations provision in section 21.202 for defining when an unlawful employment practice occurs. *See id.* In *Speciality Retailers*, we held that the 180-day limitations period in the TCHRA commences "when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *Id.* at 493. There, an employee was informed that she would be fired if her leave of absence lasted longer than one year. *Id.* at 492. When the employee did not return to work after a year, her employment was terminated. *Id.* We concluded that the 180-day limitations period began when the employee was informed of the alleged discriminatory policy, not when her employment was actually terminated a year later. *Id.* at 493. We noted a distinction between an act of continuing discrimination and an effect of past discrimination, and determined that the termination of her employment after a year's leave of absence could only be considered an effect of past discrimination. *Id.*

We cited as authority United States Supreme Court precedent—specifically, the *Ricks* decision—in reaching our conclusion. *See id.* at 492–93 (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). In *Ricks*, a professor was denied tenure, and in accordance with the university's policy regarding unsuccessful tenure applicants, Ricks was instead offered a "terminal" one year contract. 449 U.S. at 253. Two months before his termination, Ricks filed an EEOC complaint

6

alleging employment discrimination. *Id.* at 254. The Supreme Court held that Ricks's complaint was barred because it was filed more than 180 days after he was notified of the Board's decision to deny tenure. *Id.* at 257–58. It was the denial of tenure that constituted the allegedly discriminatory employment decision, not the actual termination one year later. *Id.* at 258. The Supreme Court noted that it is possible for the effects of a discriminatory employment practice to be most painful at a time far removed from the discriminatory decision itself, but, nonetheless, the discriminatory act occurs when the discriminatory decision is made. *Id.*[8]

Twenty-seven years later, the Supreme Court reaffirmed the holding of *Ricks* in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628–29 (2007). In *Ledbetter*, the Court recognized that a paycheck containing a discriminatory amount is not a present violation, but rather the effect of a prior act of discrimination. *Id.* at 628. The Court reasoned that the claimant could not shift the discriminatory intent from the initial salary decision to her paychecks, which were issued without discriminatory intent. *Id.* at 629. Although the Court empathized with the employee's policy arguments, it reasoned that those arguments found no support in the statute and that holding as such would be inconsistent with prior precedent. *Id.* at 642–43.

---

[8] *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (noting that "termination, failure to promote, denial of transfer, [and] refusal to hire" are examples of discrete acts of employment discrimination, and holding that a Title VII plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period"); *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900, 905–06 (1989) (observing that a discriminatory act occurs at the time of the discriminatory act, not when the consequences of the act start having a discriminatory effect, and holding that complaints concerning a seniority system occurred when the system was adopted with discriminatory intent); *United Airlines v. Evans*, 431 U.S. 553, 560 (1977) (holding that a challenge to a neutral seniority system "may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer").

In response, Congress enacted the Ledbetter Act, which amended Title VII to provide in relevant part:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, *or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.*

42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added). Thus, the Ledbetter Act expanded the Title VII limitations period to allow an employee complaining of pay discrimination to file a complaint within 180 days after the receipt of any allegedly discriminatory paycheck.

The Texas Legislature has not similarly amended the TCHRA. Since the Ledbetter Act was enacted in 2009, the Legislature has twice considered but failed to enact proposed legislation conforming the TCHRA to Title VII in determining when an unlawful employment practice occurs in pay discrimination claims.[9] Thus, under the TCHRA, the term "occur" is still statutorily undefined, and the controlling authority for interpreting when an unlawful employment practice occurs remains our holding in *Speciality Retailers*.

Chatha argues that we should nonetheless interpret the TCHRA as incorporating the Ledbetter Act's amendments to Title VII. Chatha primarily relies on the general purposes provision of the TCHRA, which specifies a purpose of executing the policies of Title VII. *See* TEX. LAB. CODE § 21.001(1). Chatha contends that, relying on this provision, we have frequently looked to

---

[9] *See* Tex. S.B. 280, 82d Leg., R.S. (2011); Tex. S.B. 986, 81st Leg., R.S. (2009).

8

federal law in interpreting the TCHRA, and should do so here as well. The University counters that this Court has only looked to federal law for guidance in circumstances where Title VII and the TCHRA are analogous and that they are no longer analogous after the Ledbetter Act. We agree with the University.

## B. The TCHRA Does Not Incorporate the Ledbetter Act

The general purposes provision of the TCHRA states that one of its purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id*. We have cited this provision when looking to federal law in interpreting the TCHRA, and have specifically stated that we should correlate the TCHRA with Title VII when possible. *See, e.g.*, *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). But we have never said that the general purposes provision requires the TCHRA to forever remain identical to Title VII, regardless of subsequent congressional amendments to the federal act. Rather, we consider the plain terms of the TCHRA and our precedent, and look to federal law for guidance only when the relevant provisions of Title VII are analogous. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010). Here, although the TCHRA and Title VII were previously analogous regarding when an unlawful employment practice occurs, after the Ledbetter Act, this is no longer true where pay discrimination complaints are concerned. Although Chatha invites us to read the general purposes provision as requiring the incorporation of subsequent amendments made to Title VII into the TCHRA, we decline to do so for several reasons.

First, the TCHRA's plain language does not evidence a legislative intent that Title VII amendments should be automatically incorporated into its provisions. The plain language of a

9

statute is the surest guide to the Legislature's intent. *See City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). The general purposes provision merely states that the TCHRA's purpose is to provide for the execution of policies embodied in Title VII "*and its subsequent amendments*." TEX. LAB. CODE § 21.001(1). The reference to subsequent Title VII amendments means only that one of the TCHRA's purposes is to execute policies of Title VII as it may be amended, not that those amendments should be automatically incorporated into Texas law. *See Fogle v. Sw. Bell Tel. Co.*, 800 F. Supp. 495, 499 (W.D. Tex. 1992). Indeed, in enacting the TCHRA in 1983, the Legislature could not have foreseen every possible Title VII amendment going forward, and there is no indication the Legislature intended to automatically adopt every conceivable Title VII amendment, however substantive and far-reaching, into the TCHRA.

Second, the TCHRA is not identical to Title VII and the Legislature has not indicated an intent to make it so. For example, the TCHRA requires a plaintiff to file suit within two years after a plaintiff files a charge of discrimination while Title VII lacks this requirement. *See* TEX. LAB. CODE § 21.256. Further, the TCHRA requires a plaintiff to file suit within sixty days of receiving a right-to-sue letter whereas Title VII imposes a deadline of ninety days. *Compare id.* § 21.254, *with* 42 U.S.C. § 2000e-5(f)(1). Had the Legislature intended the provisions of the TCHRA and Title VII to be identical, it could have conformed these nonanalogous provisions.

Finally, the Legislature has never treated the general purposes provision as automatically incorporating amendments made to Title VII into the TCHRA, but has instead acted legislatively when it wishes to conform the TCHRA to Title VII. One example is when, similar to the Ledbetter Act, Congress abrogated Supreme Court precedent in the context of discriminatory seniority systems.

10

In 1989, the Supreme Court held that complaints regarding a discriminatory seniority system must be brought within 180 days after the adoption of the system, not when employees experience the adverse effects of that system. *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900, 907–08 (1989). After *Lorance*, Congress amended Title VII to allow liability from an intentionally discriminatory seniority system not only at the time of its adoption but also at the time of its application. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, 1078–79.[10] After Congress enacted this amendment, the Texas Legislature followed suit by amending the TCHRA to conform it to the new federal amendments concerning seniority systems.[11] TEX. LAB. CODE § 21.127. If the general purposes provision automatically incorporated amendments made to Title VII, subsequent enactments by the Legislature would have been wholly unnecessary.

Nonetheless, Chatha points to our decision in *Caballero* as support for her assertion that this Court has previously interpreted the general purposes provision to incorporate Title VII provisions into the TCHRA. But *Caballero* does not support this proposition. There, we considered whether a litigant who is authorized to proceed in court under the TCHRA is entitled to a jury trial on damages. *Caballero*, 858 S.W.2d at 359. An employee filed suit against his employer for discrimination and, after a jury trial favorable to the employee, the trial court entered judgment permitting recovery of monetary damages. *Id.* The court of appeals, however, concluded that

---

[10] The Ledbetter Act parallels the language of this amendment with respect to pay discrimination claims. *Compare* 42 U.S.C. §2000e-5(e)(2), *with* 42 U.S.C. §2000e-5(e)(3)(A).

[11] Similarly, the Legislature acted in 2009 to amend the TCHRA following congressional amendments to the Americans with Disabilities Act. *Compare* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3555–58, *with* Act of May 27, 2009, 81st Leg., R.S., ch. 337, §§ 2–5, 2009 Tex. Gen. Laws 868, 869–70.

because the TCHRA is substantially an equitable statute, an employee was first required to obtain an injunction against his employer's conduct before being entitled to a jury trial. *Id.* We reversed, concluding that the court of appeals' reading of the relevant statutes erroneously turned a permissive procedure into a mandatory one, and the effect of that reading was inconsistent with the TCHRA as a whole. *Id.* at 359–60. We further observed that our construction of the relevant statutes was consistent with our precedent in injunction proceedings. *Id.* at 361. Only then did we note that one stated purpose of the TCHRA is to coordinate and conform TCHRA with Title VII, *id.*, and that Congress had recently amended Title VII to clarify that a party seeking compensatory or punitive damages may demand a jury trial, *id.* n.4. Thus, we looked to the plain terms of the TCHRA and relevant Texas case law in reaching our holding and merely observed that our holding was in line with recent amendments to Title VII.

Finally, Chatha points to two federal district court decisions that predicted Texas courts would abandon prior precedent and follow the Ledbetter Act in deciding when a discriminatory pay decision occurs under the TCHRA. *See Klebe v. Univ. of Tex. Sys.* (*Klebe II*), 649 F. Supp. 2d 568, 571 (W.D. Tex. 2009); *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812, 829 (S.D. Tex. 2009). *Klebe II* stated that the Ledbetter Act simply supplied a missing definition of the term "occurred" that was absent from prior law. *See* 649 F. Supp. 2d at 571. Thus, the *Klebe II* court suggested that if the TCHRA and Title VII are expressly different, courts should follow state law, but if the TCHRA is silent—such as on the meaning of "occur"—courts should follow the now-defined meaning of "occur" in Title VII. *See id.*

12

We respectfully disagree that when Congress enacted the Ledbetter Act, it merely supplied a missing definition. Rather, by amendment, it carved out an exception for pay discrimination claims to the already well-settled *Ricks* test for when an unlawful employment practice occurs. And while it is true that the TCHRA—like Title VII before the Ledbetter Act—is statutorily silent as to the definition of "occur," we have previously held that an unlawful employment practice occurs when the employee is informed of the allegedly discriminatory employment decision. *See Specialty Retailers*, 933 S.W.2d at 493. But, unlike Congress, the Texas Legislature has not crafted an exception to this rule for pay discrimination claims. As we have explained, it is the province of the Legislature to determine whether to enact an exception similar to the Ledbetter Act in the context of pay discrimination claims under the TCHRA. For this Court to apply a nonanalogous federal statute like the Ledbetter Act in the absence of legislative action would require us to abdicate our role as interpreters of the law in favor of a lawmaking function. We decline to take that role.

## C. The TCHRA Bars Chatha's Pay Discrimination Claims

Having concluded that the Ledbetter Act does not apply to Chatha's claims, we next determine whether Chatha's complaint was untimely filed under the TCHRA. Chatha does not argue her claims are timely if we conclude the Ledbetter Act does not apply. Nonetheless, because we have never directly addressed when a pay discrimination complaint must be filed under the TCHRA, we consider whether Chatha's complaint was untimely. Because the TCHRA and Title VII are no longer analogous as to when a discriminatory pay practice occurs, we look solely to our precedent in making this determination. In *Speciality Retailers*, we held that the 180-day limitations period in the TCHRA begins "when the employee is informed of the allegedly discriminatory employment

13

decision, not when that decision comes to fruition." 933 S.W.2d at 493. This is because the discriminatory employment decision is the practice made with discriminatory intent. Our rule applies with equal force in the context of pay discrimination decisions. *See Klebe v. Univ. of Tex. Sys.* (*Klebe I*), No. 03-05-00527-CV, 2007 WL 2214344 (Tex. App.—Austin 2007, no pet.) (applying our general rule in *Specialty Retailers* to pay discrimination claims); *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 85 (Tex. App.—Fort Worth 2003, pet. denied) (same).[12]

In pay discrimination cases, the setting of an alleged discriminatory pay rate is a discrete act—that is, the only act taken with a discriminatory motive is the pay-setting decision. Subsequent paychecks containing an alleged discriminatory pay amount are merely consequences of past discrimination and do not constitute an unlawful employment practice under the TCHRA. Thus, an employee must file a complaint under th e TCHRA within 180 days of the date she is informed of the alleged discriminatory pay decision.[13] Here, Chatha was informed of the alleged discriminatory pay decision when she was promoted to full professor in 2004, yet she did not file a complaint with the TWC or the EEOC until 2006.[14] Thus, Chatha's complaint was untimely filed under section 21.202. *See* TEX. LAB. CODE § 21.202.

---

[12] The court of appeals here acknowledged that if the Ledbetter Act did not apply, each new paycheck would not constitute a new occurrence and Chatha's complaint would be untimely. 317 S.W.3d at 406.

[13] We note that a situation could arise where an employer has adopted a facially discriminatory payment system that would potentially constitute an act of intentional discrimination anytime the employer issued a check to a disfavored employee. *See Ledbetter*, 550 U.S. at 634; *Cooper-Day*, 121 S.W.3d at 84. However, neither party alleges that situation applies here.

[14] Chatha's complaint of discrimination states that the last day of discrimination was in September 2005. However, even accepting this as true, her complaint was still filed outside of the 180-day limitations period because she did not file her complaint until September 2006.

**D. The University's Plea to the Jurisdiction**

Having concluded that Chatha's complaint was untimely filed under the TCHRA, we next determine whether that failure is a jurisdictional bar to suit. At the trial court, the University filed a combined motion for summary judgment and plea to the jurisdiction, asserting that because Chatha failed to comply with section 21.202, the trial court lacked jurisdiction over the suit. The Legislature has mandated that all statutory prerequisites to suit are jurisdictional in suits against governmental entities. TEX. GOV'T CODE § 311.034. Here, it is undisputed that compliance with section 21.202 is mandatory and that the University timely raised Chatha's failure to comply at the trial court. Thus, as we will explain below, we conclude that because the University is a governmental entity, and compliance with section 21.202 is a statutory prerequisite to suit under Texas Government Code section 311.034, the University's plea should have been granted and the case dismissed.[15]

**1. Statutory Prerequisite to Suit Under Section 311.034 of the Texas Government Code**

Since the Legislature amended section 311.034 of the Government Code in 2005, we have not construed its reach. Because there is some confusion among the courts of appeals about section 311.034's scope, we deem it prudent to review the jurisprudential context from which the statute was amended.

For decades, Texas courts followed the rule we announced in *Mingus v. Wadley*, establishing that when a cause of action is derived from statute, strict compliance with all statutory prerequisites

---

[15] Because we conclude section 21.202 is a statutory prerequisite to suit under section 311.034, and is thus a jurisdictional requirement under that section, we need not decide whether section 21.202 itself is jurisdictional in nature.

is necessary to vest a trial court with jurisdiction. 285 S.W. 1084, 1087 (Tex. 1926). But in 2000, in *Dubai Petroleum Co. v. Kazi*, we quoted the Restatement (Second) of Judgments in noting that "'the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction,'" 12 S.W.3d 71, 76 (Tex. 2000) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. b, at 118 (1982)), and "overrule[d] *Mingus* to the extent that it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional," *id*. Because *Dubai* involved private litigants, courts of appeals struggled with its application in cases against governmental defendants, citing the apparent dichotomy of *Dubai*'s holding with the basic tenets of sovereign immunity and our treatment of the doctrine in statutory causes of action. *See, e.g.*, *King v. Tex. Dep't of Human Servs.*, 28 S.W.3d 27, 31 (Tex. App.—Austin 2000, no pet.).

In 2004, we expanded our holding in *Dubai* to governmental entities in *Loutzenhiser*, bringing clarity to any lingering confusion in the lower courts. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004). There, we held that because the pre-suit notice requirement in section 101.106(a) of the Texas Tort Claims Act was not a condition of the statute's waiver of immunity, the failure to provide it was not a jurisdictional defect. *Id.* at 365; *see Colquitt v. Brazoria Cnty*, 324 S.W.3d 539, 542 (Tex. 2010). We reasoned that because that provision states "[a] governmental unit is *entitled* to receive notice," there was no question it was a mandatory statutory requirement; but, because it did not specify the consequences of a failure to provide notice, we concluded it was not a condition precedent to suit and the failure to give notice would not deprive the trial court of jurisdiction. *Loutzenhiser*, 140 S.W.3d at 359, 365; *see* TEX. CIV. PRAC. & REM.

16

CODE § 101.101(a); *see also Colquitt*, 324 S.W.3d at 543. The Legislature responded to *Loutzenhiser* in 2005, amending section 311.034 of the Government Code, entitled "Waiver of Sovereign Immunity," to make notice requirements, and all other statutory prerequisites to suit, jurisdictional as to governmental entities:

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language . . . . *Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity*.

*See* TEX. GOV'T CODE § 311.034 (emphasis added); Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783. This amendment evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010); *Colquitt*, 324 S.W.3d at 543.

Accordingly, we must determine whether the 180-day filing deadline in the TCHRA is a statutory prerequisite to suit under section 311.034. We rely on statutory interpretation principles to ascertain and "give effect to the Legislature's intent as expressed by the statute's language." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We use definitions prescribed by the Legislature and any particular meaning the words have acquired. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (citing Texas Government Code section 311.011(b)).

The term "statutory prerequisite" has three components. First, it is of obvious mention that in order to fall within the ambit of section 311.034, a prerequisite must be found in the relevant

17

statutory language. *See Colquitt*, 324 S.W.3d at 543 (recognizing that although the statute called for pre-suit notice, it also provided that formal notice is not required when the government has obtained timely actual notice, and thus because the government had actual notice, the failure to provide formal notice did not act as a statutory prerequisite to suit). Second, the prerequisite must be a requirement.[16] And finally, the term "pre" indicates the requirement must be met before the lawsuit is filed. *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 925 (Tex. 2011) (holding that post-suit notice requirement was not jurisdictional, even in light of section 311.034, because post-suit notice is not a "prerequisite" to suit). Thus, according to the plain language of section 311.034, the term "statutory prerequisite" refers to statutory provisions that are mandatory and must be accomplished prior to filing suit.

This interpretation is supported by the particular meaning the term "statutory prerequisite" has acquired in our precedent. In drafting section 311.034, the Legislature took special care to use the term we articulated in *Dubai*. While in *Mingus* we held that all "statutory provisions are mandatory and exclusive," 285 S.W. at 1087, in *Dubai* we "overrule[d] *Mingus* to the extent that it characterized the plaintiff's failure to establish a *statutory prerequisite* as jurisdictional," 12 S.W.3d at 76 (emphasis added). With the 2005 amendment to section 311.034—that *statutory prerequisites* are jurisdictional in all suits against a governmental entity—the Legislature effectively abrogated our holding in *Loutzenhiser* and reverted to our broader holding in *Mingus* in suits against a governmental entity. *See Mingus*, 285 S.W. at 1087 (concluding that in suits against a governmental

---

[16] The common meaning of the word requisite is "essential," "necessary." WEBSTER'S NEW COLLEGIATE DICTIONARY 976 (1980).

entity, "where the cause of action and remedy for its enforcement are derived not from the common law but from statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable"). The Legislature's mandate is clear: In a statutory cause of action against a governmental entity, the failure to adhere to the statute's mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit.[17]

Our interpretation is consistent with the doctrine of sovereign immunity. Sovereign immunity bars suits against the state and its entities, and this immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver. TEX. GOV'T CODE § 311.034; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). In this way, the Legislature specifically carves out particular substantive claims for which the State will consent to suit and provides the procedures a litigant must follow to obtain such waiver. We have observed that in order to allow the Legislature to protect not only its policy-making function but also to preserve its interest in managing state fiscal matters, this Court consistently defers to the Legislature to waive immunity from suit. *See, e.g., Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 848 (Tex. 2009) ("'In a world with increasingly complex webs of governmental units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require.'") (quoting *City of Galveston v. State*, 217 S.W.3d 466,

---

[17] It is relevant to note that the Legislature has also made clear that statutory prerequisites are not only mandatory but also jurisdictional in the context of a statute's filing limitations period in wage claims. In *Igal v. Brightstar Information Technology Group, Inc.*, we held that a Texas Labor Code Chapter 61 filing limitations period was mandatory but not jurisdictional. 250 S.W.3d 78, 86 (Tex. 2008). In response to this holding, the Legislature amended Chapter 61 to clarify that the 180-day filing deadline for wage claims is jurisdictional and to require the dismissal of untimely wage claims for lack of jurisdiction. *See* TEX. LAB. CODE § 61.051(c) ("The 180-day deadline is a matter of jurisdiction."); *id.* § 61.052 ("If a wage claim is filed later than the date described by Section 61.051(c), the examiner shall dismiss the wage claim for lack of jurisdiction.").

469 (Tex. 2007))); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("We again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity."). Thus, it is the Legislature's function to determine what steps a litigant must take before the state's immunity is waived. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) ("[T]he Legislature . . . has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met."). Although section 311.034's scope is fairly sweeping, it is consistent with the purpose of sovereign immunity and within the Legislature's discretion to determine the procedures required before the State's immunity is waived.

Having construed the meaning of the term "statutory prerequisite," we turn to whether Chatha's failure to comply with the requirements of section 21.202 is a jurisdictional bar to her suit against the University. As mentioned, section 21.202 provides:

(a)      A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.

(b)      The [TWC] shall dismiss an untimely complaint.

TEX. LAB. CODE § 21.202.

Since the 2005 amendment to section 311.034, three courts of appeals have specifically addressed whether the 180-day filing deadline in the TCHRA is a statutory prerequisite to suit as contemplated by section 311.034. All three concluded that it is.[18] We agree.

---

[18] *Comptroller v. Landsfeld*, 352 S.W.3d 171, 177–78 (Tex. App.—Fort Worth 2011, pet. denied); *Lamar Univ. v. Jordan*, No. 09-10-00292-CV, 2011 WL 550089, at *5 (Tex. App.—Beaumont Feb. 17, 2011, no pet.) (stating that "[t]he Labor Code filing deadlines are jurisdictional in cases involving statutory requirements relating to governmental entities"); *Tex. Dep't. of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *3 (Tex. App.–Austin May 6, 2011, no pet.) (reasoning that the waiver of sovereign immunity under the TCHRA applies "only if the claimant strictly satisfies the procedural requirements outlined in Chapter 21").

20

We have repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity. *See, e.g.*, *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). Although our precedent establishes that the TCHRA clearly and unambiguously waives sovereign immunity, it is a *limited* waiver of immunity. *See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 660. The TCHRA is a statutory cause of action with no remedy at common law. As we have recently stated, it does not create subject matter jurisdiction in Texas courts; rather, a claimant can bring suit under the TCHRA against a governmental entity only after a claimant strictly satisfies the procedural requirements outlined in the TCHRA. *Id.* ("[T]he Legislature . . . has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met."). In sum, we hold that section 21.202's administrative filing requirement is a mandatory statutory requirement that must be complied with before filing suit, and, as such, is a statutory prerequisite under section 311.034. Because Chatha failed to timely file her complaint with the TWC in accordance with the requirements of section 21.202, her suit against the University is jurisdictionally barred.

## 2. Response to the Dissent

Ignoring the plain language of section 311.034 and the Legislature's unequivocal abrogation of our decision in *Loutzenhiser*, the dissent posits that the failure to timely file a complaint with the TWC within 180 days is not a statutory prerequisite to suit. To support its argument, the dissent first attempts to draw a distinction based on whether the Legislature has specifically articulated that the pre-suit task must be accomplished before filing suit. This is a distinction without a difference. It is the Legislature that establishes the timeline for filing suit and the mandatory tasks that must be

21

completed before filing; a statutory provision that is mandatory and must be complied with before filing suit is sufficient to fall within the ambit of section 311.034. The dissent's suggestion that the Legislature must specifically articulate in every instance that the plaintiff must comply with a provision or be barred from filing suit not only inexplicably constrains the plain language of section 311.034, but also renders the 2005 amendment to that statute meaningless. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 931 (Tex. 2010).

Moreover, the dissent's argument mirrors the rationale we used in *Loutzenhiser*, where we reasoned that because the pre-suit notice provision was "not a condition of the Tort Claims Act's waiver of immunity as other provisions are," the failure to provide it did not deprive the court of jurisdiction. 140 S.W.3d at 365. But the dissent's analysis is flawed. The 2005 amendment to section 311.034 expressly rejected this reasoning, and in turn made notice, along with other statutory prerequisites, conditions of a statute's waiver of immunity. We can find no logical basis for concluding, as our dissenting colleagues do, that pre-suit notice is different from any other mandatory statutory prerequisites provided by the Legislature, such as the pre-suit administrative filing requirement at issue here. Following the 2005 amendment to section 311.034, we concluded that mandatory pre-suit notice to a governmental defendant is a statutory prerequisite, whether or not the Legislature has specifically mandated that a plaintiff may not file suit until providing notice. *See Arancibia*, 324 S.W.3d at 547. We acknowledge that some courts of appeals have carved out specific provisions, such as certain filing deadlines, as non-jurisdictional.[19] But we agree with the

---

[19] *See, e.g.*, *Tex. Dep't of Criminal Justice v. Guard*, No. 10-06-00065-CV, 2007 WL 1119572, at *3 (Tex. App.–Waco 2007, no pet.) ("[A] filing period is not an act that must be performed *prior* to filing suit and so is not a statutory prerequisite.").

22

other courts of appeals that have relied on our holdings in *In re United Services Automobile Ass'n* and *Mission Consolidated Independent School District*[20] for the proposition that a mandatory statutory provision is a statutory prerequisite under section 311.034, provided it is to be complied with prior to filing suit.[21] Under section 311.034, a statutory requirement commanding action before filing suit is a statutory prerequisite. *See, e.g.*, *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 299. Thus, a statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity. *See* TEX. CIV. PRAC. & REM. CODE § 311.034.

The dissent worries that under our holding, equitable defenses could potentially be urged against private employers but not governmental entities. However, the dissent's position invades the domain of the Legislature and cuts against the very nature of sovereign immunity. Because a governmental entity may challenge the denial of a plea to the jurisdiction in an interlocutory appeal, TEX. CIV. PRAC. & REM. CODE § 51.014, the entity may effectively avoid the time and expense of litigating the merits of a case by first raising the statutory prerequisite issue under section 311.034.

---

[20] *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 310 ("While the Legislature could make the Labor Code filing deadlines jurisdictional, as it has in cases involving statutory requirements relating to governmental entities, *see* TEX. GOV'T CODE § 311.034 (providing that 'statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity'), it has not done so here."); *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 660 ("The Legislature . . . has consented to suits brought under the TCHRA, provided the procedures outlined in the statute have been met.").

[21] *See, e.g.*, *Jones v. State Bd. of Educator Certification*, 315 S.W.3d 237, 240 (Tex. App.–Austin 2010, pet. denied) (stating that, "[i]n suits against governmental entities, a timely filed petition for judicial review is a statutory prerequisite to suit, so that failure to comply deprives the trial court of jurisdiction"); *El Paso Indep. Sch. Dist. v. Alspini*, 315 S.W.3d 144, 151 (Tex. App.–El Paso 2010, no pet.) (holding that the two-year limitations deadline to file suit under the TCHRA is a statutory prerequisite contemplated by section 311.034).

23

The potential absence of equitable defenses against governmental entities that retain their immunity is sovereign immunity's most basic tenet.

Finally, the dissent relies on the contrast between Title VII and the TCHRA, oddly suggesting that procedural differences under the two statutes would impose an unworkable dichotomy. The dissent suggests that equitable defenses will be available under Title VII, but not under the TCHRA when a claimant files an untimely complaint against a governmental entity. But given the 2005 amendment to section 311.034, looking to federal case law for guidance in determining the jurisdictional nature of the TCHRA's 180-day filing deadline is inappropriate when a claimant files suit against a governmental entity. Although we look to federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language, *see, e.g.*, *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 308, that is not the case here. Congress has not enacted a provision comparable to section 311.034. Thus, we do not look to federal case law for guidance, as it would provide none.

In sum, the dissent's approach wholly ignores the Legislature's straightforward mandate that in suits against the government, statutory prerequisites are jurisdictional. The Legislature has made clear that the failure to file an administrative complaint within 180 days of the alleged unlawful employment discrimination by a governmental entity is a jurisdictional bar because it is a statutory prerequisite to suit under section 311.034 of the Government Code. Thus, because Chatha failed to file her complaint with the TWC within 180 days after the alleged unlawful employment practice occurred, the University properly asserted a plea to the jurisdiction, and the plea should have been granted. *See* TEX. LAB. CODE § 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.").

### III. CONCLUSION

It does not escape our attention that it may be difficult for employees to discover discriminatory policies because of the secrecy of compensation decisions. *Ledbetter*, 550 U.S. at 645, 649–50 (Ginsberg, J., dissenting). Moreover, we recognize the potential difficulty facing employers and employees in having the 180-day limitations period for filing a pay discrimination complaint accrue at different times under Title VII and the TCHRA. But we are not the law-making body. We are called to interpret and apply the law as it is enacted by the Legislature. Our precedent establishes that the 180-day limitations period in the TCHRA begins "when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *Specialty Retailers*, 933 S.W.2d at 493. Congress has created an exception in the Ledbetter Act for pay discrimination claims brought under Title VII; the Texas Legislature has not. We decline to adopt federal statutory language that the Legislature has failed to similarly enact into state law. We therefore reverse the court of appeals' judgment and render judgment dismissing the suit.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED: August 31, 2012**

25