**CONCUR & DISSENT; Opinion Filed March 10, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00351-CV

### TARRANT COUNTY COLLEGE DISTRICT, Appellant
### V.
### AMANDA SIMS, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-18217**

## CONCURRING AND DISSENTING OPINION
Opinion by Justice Schenck

I concur in the result of the majority's opinion because Sims clearly has a

viable claim, including a federal cause of action that we as state courts are bound to

recognize as within the trial court's jurisdiction. The majority goes on, however, to

reach the question of whether the Texas Legislature intended the Texas Commission

on Human Rights Act[1] to make governmental and private employers subject to suit

for claims of alleged employment discrimination based on sexual orientation.

---

[1] In 2004, the Texas Commission on Human Rights (TCHR) was replaced with the Texas Workforce Commission civil rights division (TWC). *See* TEX. LAB. CODE § 21.0015. Our courts have continued to refer to the chapter as the Texas Commission on Human Rights Act or TCHRA. *E.g.*, *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012).

Because Sims's claim falls squarely within the district court's jurisdiction, regardless of whether it is said to be grounded in federal or state law, the district court did not have an opportunity to consider whether our state law was affected by the United States Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1754 (2020), and no party before us presents the issue in an adversarial posture, I view this case as particularly ill-suited to reach that question and as an attempt to make new law at this stage. The parties nevertheless urge us to reach the merits and to presume that the legislature intended the TCHRA's "general guidance" provision to have the effect of incorporating the *Bostock* holding four decades after the enactment of its text. I disagree with that conclusion for multiple reasons.

Accordingly, I cannot join in the majority's decision to hold that *Bostock* controls the state law question of our interpretation of the TCHRA, and I respectfully concur in the result only.

## I. Our Procedural Posture Should Counsel Us to Avoid Unnecessary Pronouncements

First, I am concerned that the able trial court did not have a chance to review *Bostock* before reaching its decision. As noted by the majority, the order at issue here was signed on February 21, 2020. The United States Supreme Court issued its decision in *Bostock* on June 15, 2020. At the time the trial court signed its order, most federal circuit courts of appeal, including the Fifth Circuit, had "expressly held that Title VII does not prohibit discrimination on the basis of sexual orientation."

–2–

*See Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 330 (5th Cir. 2019) (citing *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979)). While this alone would not ordinarily compel us to avoid developing an unsettled legal question on interlocutory appeal, as we would review such issues *de novo* in any event, this is hardly my only concern with the posture of this case.

I am also concerned that we have no one—among the appellant, the appellee, and an amicus—joining issue over the question of how to interpret the TCHRA's operative prohibition on discrimination "because of . . . sex." The appellant–employer, Tarrant County College District, urges acknowledgement of the TCHRA claim only because it also argues that such a recognition would be exclusive (and thus fatal) to the whistleblower claim on which the plaintiff relied below. The appellee, meanwhile, advocates for the state law claim only on appeal, explaining at oral argument that she did not anticipate the *Bostock* decision at the pleading stage and "may prefer" to rely on a state court remedy.[2] Putting aside Sims's initial pleading decisions or preference for discovering a new state claim, a case or controversy typically requires advocacy from both sides to meaningfully develop the issues and arguments before us and to avoid issuing unnecessary, advisory opinions. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (discussing

---

[2] Plaintiff's pre-suit notice referenced Title VII explicitly and she has clarified, in a post argument letter brief, that she intends to preserve her right to amend her pleadings, if necessary, to present the federal cause of action.

standing requirements of Article III of U.S. Constitution); *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304 (Tex. 2007).

## II. As Sims's Federal Title VII Cause of Action Supports Jurisdiction over Her Claim, Reaching Beyond That Question Is Not Necessary to Resolve the Jurisdictional Question

Regardless of my foregoing concerns, I have no doubt that Sims has a viable federal cause of action under Title VII. Since 1990, that cause of action has been cognizable in state court. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990). Thus, barring some contrary decision by the Texas Supreme Court, we are bound to recognize and exercise jurisdiction over this claim. *E.g.*, *Garcia v. Shell Oil*, 355 S.W.3d 768, 772 n.4 (Tex. App.—Houston [1st Dist.] 2011, no pet.).[3] To be sure, Sims's petition in this case did not explicitly reference federal law. There is no requirement for it to do so under our notice pleading rules, however. TEX. R. CIV. P. 47(a). A petition "presupposes the applicable rules of law." 2 MCDONALD'S TEXAS CIVIL PRAC. § 7:11 (1992). And, the court is presumed both to know the law, state or federal, and to be capable of taking "notice [of] and apply[ing] the proper rule." *Lyon Van Lines v. Ogden*, 503 S.W.2d 632, 636 (Tex. App.—Houston [1st Dist.] 1974, no writ); *see also W&T Offshore v. Meyers*, 577 S.W.3d 247, 256 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (op. on rehearing) ("Meyers was not required to plead for the application of federal or Louisiana law for the trial court,

---

[3] *See also Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 367 (1990).

–4–

or this court, to take notice of it.") (citing *Daugherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989)).

Sims might have explicitly disavowed any federal claim that might naturally arise from the factual averments of her petition to avoid removal, for example.[4] She did not do that, however. On the contrary, her counsel explained at argument that he did not believe such a claim was viable when this case was filed and thus did not address the issue of whose law, state or federal, he invoked in support of Sims's claim. While plaintiff's counsel indicated that Sims may now prefer to rely on a state remedy, should it exist, she has not unequivocally eschewed that available federal remedy on appeal or explained how the state remedy, if recognized, would be different.

In view of these pleadings, I would recognize jurisdiction over the claim, regardless of its derivation, and remand this matter to allow the parties to develop the issue in accordance with the governing law, including important ancillary questions such as venue.[5] *E.g., City of Dallas v. Jones*, No. 05-07-00831-CV, 2008 WL 588997, at *4 (Tex. App.—Dallas Mar. 5, 2008, pet. denied) (mem. op.) (court

---

[4] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 n.7 (1982); *see, e.g.*, *Leaumont v. City of Alexandria*, 1:13-CV-02397, 2013 WL 5426013, at *1–2 (W. D. La. Sept. 26, 2013), *aff'd*, 582 Fed. App'x 407 (5th Cir. 2014).

[5] Because I would conclude that Sims does not have a separate remedy available to her under the TCHRA, I would not conclude her whistleblower claim is barred by the TCHRA, though it may still be redundant of the federal claim. In all events, the viability *vel non* of that theory of recovery would not, under the circumstances presented in this interlocutory appeal, justify separate parsing of the claim in to order answer the limited jurisdictional question before us. *See City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008).

not required to parse each cause of action making up claim that is dependent on same facts where jurisdiction over claim is proper); *see also Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006).

Finally, to the extent the jurisdictional issue might be remedied by amendment to more specifically articulate the viable Title VII claim, leave to do so should be given. *See Cty. of Cameron v. Brown*, 80 S.W.3d 549, 559 (Tex. 2002).

### III. Neither the TCHRA's Operative Text Nor Its "General Purpose" Provisions Can Reasonably Be Read to Reach This Claim

Pressed forward to the merits, I see the question of whether the TCHRA creates a claim for damages against governmental and private employers alleged to have discriminated against employees or applicants on account of their sexual orientation as one of Texas state law governed by the intent of the legislature that enacted it and the governor who signed it in 1983.[6] The United States Supreme Court majority in *Bostock* was able to draw on a plethora of federal statutes in support of its conclusion that Congress would (or should) have understood the phrase "because of sex" to include "sexual orientation" as a matter of federal law in 1964, *see Bostock*, 140 S. Ct. at 1739–40, but Texas had a far different statutory landscape

---

[6] *E.g.*, *Perez v. Zagami, LLC*, 218 N.J. 202, 212 (2014) (statement of governor on signing state civil rights law); *see also* N. SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION § 48.05 (Sands 4th ed. 1985) ("The governor's action in approving or vetoing a bill constitutes a part of the legislative process, and the action of the governor upon a bill may be considered in determining legislative intent."). The extent to which an executive signing statements are probative is a matter of debate, of course. John M. de Figueiredo, Edward H. Stiglitz, *Signing Statements and Presidentializing Legislative History*, 69 ADMIN. L. REV. 841, 847–52 (2017).

when the TCHRA was enacted in 1983 and codified in 1993. Indeed, at the time the TCHRA was passed and through today our state law foreclosed same-sex marriage[7] and our criminal code affirmatively outlawed and penalized "homosexual conduct,"[8] foreclosing the prospect that the legislature simultaneously intended to create a claim for damages against governmental and private employers for allegedly discriminating in this regard. Whether any of this is good or bad policy, then as now, is a question for the legislature, not the courts. What matters, for our purposes, is what the law says and what the legislature understood it to mean at the time.

A. *We Construe Our Statutes in Accordance with the Plain Meaning Ascribed to the Language at the Time*

In construing the TCHRA or any other statute, Texas courts are obliged to "give [the] language used in a statute the meaning with which it was used by the legislature." *Michael v. Michael*, 79 S.W. 74, 74 (Tex. Civ. App.—San Antonio 1904); *see also Taylor v. Firemen's Civil Serv.*, 616 S.W.2d 187, 189 (Tex. 1981) (statute should be given "meaning it had when enacted"). Thus, even if one puts aside the disagreements about how the Supreme Court applied the *federal* statutory language in determining what the *U.S. Congress* should have been presumed to intend in Title VII, neither the U.S. Code nor the U.S. Constitution addressed the

---

[7] TEX. CONST. art. §§1, 32; TEX. FAM. CODE § 2.001 (b) (prohibiting marriage license issuance "for the marriage of persons of the same sex"); *but see Obergefell v. Hodges*, 576 U.S 644, 675–76 (2015) (declaring unconstitutional state laws to extent they exclude same-sex couples from civil marriage on same terms and conditions as opposite-sex couples).

[8] Section 21.06 of our penal code remains in our statutes though it was declared unenforceable in 2003. *See Lawrence v. Texas*, 539 U.S. 558 (2003) (declaring TEX. PENAL CODE § 21.06 unconstitutional).

phrase "because of sex" in a manner remotely approximating the background Texas law in 1983. Indeed, it is difficult to imagine how the *Bostock* majority could have formed around its construction of Title VII if the U.S. Code resembled our own.

I do not understand the majority even to suggest that the legislature or Governor White might have understood themselves to be creating the claim at issue here *when the TCHRA was enacted*. Instead, the majority follows the parties and appellee's supporting amicus in resorting to one of the "general purposes" of the TCHRA as "(1) provid[ing] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." LAB. §21.001(1).

B. *The "General Purposes" Provision Does Not Silently or Automatically Incorporate Later Developments in Federal Law Except Insofar as It Is Analogous to Texas Law*

The parties quite properly note that our supreme court has cited the "general purposes" provision and embraced federal law for "guidance" where the TCHRA and Title VII are "analogous." *See, e.g.*, *Quantum Chem. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam). As the federal Equal Employment Opportunity Commission[9]—and every federal appellate court prior to *Bostock*[10]—had uniformly rejected the argument that Title VII's language reached alleged sexual orientation discrimination in 1983, the Texas Legislature's understanding of Title VII would

---

[9] *Bostock*, 140 S. Ct. at 1757 n.7 & 1777 n.41 (Alito, J., dissenting) (collecting EEOC positions).

[10] *Bostock*, 140 S. Ct. at 1777 (Alito, J., dissenting).

have clearly run in one direction at the time it listed the "general purposes" underlying the THCRA. Thus, there is no reason to believe the legislature would have foreseen this reading of Title VII in 1983 when even the parties in this case did not foresee it at the pleadings stage in this case.

Accordingly, even if one assumes the "general purposes" provision was intended to expand upon the operative text, it would have confirmed, rather than conflicted with, Texas state law at the time the trial court here reviewed the issue. Thus, to recognize this claim, it would be necessary for the "general purposes" provision to be intended to operate prospectively and to potentially change the intended reach of the act at the time. As explained below, I do not believe that the legislature intended to leave (or even could have left) this basic question unaddressed in the original enactment, thus leaving its answer to the judiciary, much less the judiciary of another sovereign.

While the parties understandably cite *Toennies* and like cases applying section 21.001's "general purpose" of tracking policies embraced in "Title VII and its subsequent amendments," they do not cite *Prairie View A & M University v. Chatha*, 381 S.W.3d 500, 505 (Tex. 2012). In that case, our supreme court considered and rejected the argument that subsequent development of federal law would be carried directly backwards into the TCHRA by operation of section 21.001 and without regard to the intention of the legislature that enacted it. *Id.* at 507. While the court acknowledged the general purpose of tracking federal policy, it made clear that "the

–9–

Legislature could not have foreseen every possible Title VII amendment going forward, and there is no indication the Legislature intended to automatically adopt every conceivable Title VII amendment, however substantive and far-reaching, into the TCHRA." *Id.* at 507.

What is critical, then, and wholly missing from the parties' arguments, is any explanation as to why the Texas Legislature would have considered Title VII's reading in 2020 to be analogous to the background Texas law in 1983 when it so clearly conflicted with both Texas *and* federal law at the time. If the "guidance" in section 21.001(1) had been intended to have the meaning the parties now urge, why would any of the rest of the TCHRA's text have been necessary? Title VII and the decisions applying it—then and in the future—would supply the rule of decision under the TCHRA. To be sure, the legislature meant *something* by enacting the operative provisions. The controlling question is what the legislature intended when it passed the TCHRA in 1983. *See Chatha*, 381 S.W.3d at 507; *Taylor*, 616 S.W.2d at 189 (statute should be given "meaning it had when enacted").

### C. *I Doubt That the Legislature Could Confer the Authority to Recognize This Claim to Another Body*

I also doubt that the legislature even *could have* validly left this issue for later resolution by the U.S. Supreme Court or the U.S. Congress. Under the federal constitution, the states, qua states, are responsible for their own governance and for their own decisions, for good or ill. U.S. CONST. amend. X; *Mistretta v. United*

–10–

*States*, 488 U.S. 361, 371 (1989) (finding nondelegation doctrine rooted in principle of separation of powers).

The Texas Constitution hardly shrinks from that mandate. Instead, it unambiguously declares its own laws to be "supreme" and insists upon a separation of powers among the branches. TEX. CONST. art. I §§ 1–2. Article III, Section 1 of the Texas Constitution vests in the legislature the exclusive power *and responsibility* to make laws, subject only to contemporaneous executive veto and subsequent judicial review for constitutionality. TEX. CONST. art. III, § 1. It is thus "[a] settled maxim" of Texas "constitutional law . . . that the power conferred upon the legislature to make the laws cannot be delegated by that department to any other body or authority." TEX. CONST. art. III, § 1 interp. commentary. Article III, Section 1 of the Texas Constitution generally prohibits delegations to another government's entities. *See Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). I thus reject the implication of the parties' arguments that the interpretation of the TCHRA could be materially altered by a *later* decision of the U.S. Supreme Court interpreting *federal* law.

IV. **Our Role as Part of the State Judiciary Does Not Support Our Reaching This Issue or Answering It as the Parties Have Urged**

The wisdom of whether the TCHRA should be defined to include a prohibition on discrimination because of sexual orientation is not a question for us. Our role as the state judiciary is simply to interpret the laws. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 581 (Tex. 2013); *see also Bostock*, 140 S. Ct. at 1738

–11–

("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations."). As noted, the power and responsibility to legislate has been granted to another body. *Compare* TEX. CONST. art. III, § 1 *with* art. V, § 1. Because such a holding is neither necessary at this juncture nor, in my view, appropriate in view of the text of the act and our limited role in construing it, I disagree with the majority's holding.

Finally, while I have no license to add to or subtract from this or any other legislation Texas has seen fit to pass, I commend the legislature's efforts to combat discrimination in the workplace to date and recognize that decisions to alter the at-will employment doctrine implicate broad policy considerations including the expenses inherent in litigation and respect for the rights and dignity of employers and employees alike. Whether the legislature sees fit to add to the claims thus far recognized by, for example, prohibiting disparate treatment based on sexual orientation, unpopular political expression, or any other cause, is a matter commended by the constitution exclusively to the legislature itself.

Because I cannot join in the majority's decision to hold that *Bostock* controls

our interpretation of the TCHRA, I respectfully concur in the result only.


                                        /David J. Schenck/
                                        DAVID J. SCHENCK
                                        JUSTICE

200351CF.P05