# Supreme Court of Texas

No. 23-0711

Six Brothers Concrete Pumping, LLC,

*Petitioner*,

v.

Texas Workforce Commission and Martin Tomczak,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE YOUNG, joined by Justice Busby, concurring in the denial of the motion for rehearing.

On the surface, this case concerns $1,000—the amount of unpaid wages that Martin Tomczak claims from his former employer, Six Brothers Concrete Pumping, LLC. Six Brothers fought Tomczak in administrative proceedings before the Texas Workforce Commission and lost. The court of appeals agreed with the district court that Six Brothers's lawsuit must be dismissed for lack of subject-matter jurisdiction. This Court denied Six Brothers's resulting petition for review, and Six Brothers has filed a motion for rehearing raising two important issues. The first implicates the line between public and private litigation. A statute required Six

Brothers to sue the commission, thus injecting "sovereign immunity" into what at its core is just a private dispute between Six Brothers and Tomczak. The second issue involves the jurisdictional consequences of filing suit in the wrong venue. Here, Six Brothers's apparent error in selecting venue led to its otherwise timely suit being dismissed on jurisdictional grounds.

The issues that Six Brothers raises are far from settled and warrant further consideration in a suitable case. I write separately to address why the issues matter and why the Court nonetheless properly denies the motion for rehearing in this particular case.

**I**

Martin Tomczak initiated an administrative proceeding and sought unpaid wages from his former employer, Six Brothers. Using its authority as provided in the Texas Payday Law, the commission ruled for Tomczak, ordering Six Brothers to pay $1,000. Six Brothers timely "br[ought] a suit to appeal the order" and, as required by statute, named both the commission and Tomczak as "defendants in the suit." Tex. Lab. Code § 61.062(a)–(c). Six Brothers made the apparently fateful decision to bring suit in *Harris* County, not in neighboring *Montgomery* County, where Tomczak resided.

Six months into the litigation, the commission filed a plea to the jurisdiction, arguing that because Six Brothers failed to bring suit "in the county of the claimant's residence," *id.* § 61.062(d), the Harris County trial court lacked subject-matter jurisdiction. The commission argued that this mandatory-venue provision is a "[s]tatutory prerequisite[]" to a suit," meaning that it is a "jurisdictional requirement[]" in this "suit[]

2

against a governmental entity." *See* Tex. Gov't Code § 311.034. Despite Six Brothers's arguments that venue does not implicate subject-matter jurisdiction and that objections to it are waivable, *see* Tex. R. Civ. P. 86.1, the trial court granted the commission's plea and dismissed Six Brothers's suit "for want of jurisdiction with prejudice."

The court of appeals affirmed, holding in an "issue of first impression" that "the mandatory venue requirement in [Labor Code § 61.062(d)] is a statutory prerequisite to suit [under Government Code § 311.034], making failure to adhere to it a jurisdictional bar to suit." 679 S.W.3d 746, 748 (Tex. App.—Houston [1st Dist.] 2023). To get there, it (correctly) observed that "[a] statutory prerequisite is a requirement that: (1) is found in the relevant statute; (2) is required by the relevant statute; and (3) must be met before the suit is filed." *Id.* at 749, 751 (citing *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 511–12 (Tex. 2012)). The court of appeals homed in on the last element and noted that § 61.062(d) states that suits like Six Brothers's "*must* be brought" in a certain venue. *Id.* at 751 (emphasis added) (quoting Tex. Lab. Code § 61.062(d)). The court reasoned that because "[t]he term 'must' in a statute creates a condition precedent," and "[a] condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation," the condition precedent found in § 61.062(d) "is a statutory prerequisite," and the "trial court did not err in granting the commission's plea to the jurisdiction." *Id.* at 751–53 (first quoting Tex. Gov't Code § 311.016(3); and then quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)).

Six Brothers sought this Court's review, but we denied its petition following briefing. Six Brothers then filed the motion for rehearing that

3

the Court denies today, raising two significant issues. Because both issues are, at best, underdeveloped both in this case and in the courts of appeals generally, my vote comes with the hope that the issues presented in this motion will come before us again after the courts have had ample time to consider them. And thus, while I agree that it is right to deny the motion for rehearing, I think it is also proper to express my appreciation to Six Brothers and its counsel for helpfully identifying these issues.

## II

I proceed as follows.

First, Government Code § 311.034 is inapplicable unless Six Brothers's suit is actually "against" the commission. Is it? I have my doubts. Tomczak invoked the commission's authority to function as an executive-branch tribunal, statutorily charged with resolving the Six Brothers–Tomczak dispute. To obtain review of that resolution, Labor Code § 61.062(d) required Six Brothers to file a new lawsuit naming the commission as a defendant. Does such a lawsuit—a *procedural* mechanism to trigger further review—constitute a suit "against" the commission? If so, can *any* essentially private litigation be funneled through an administrative process, which (by requiring a new lawsuit to trigger judicial review) would imbue the administrative result with the attributes of sovereign immunity? In other words, if sovereign immunity is only "waived" (thus allowing Six Brothers to secure judicial review of the order compelling it to pay Tomczak) subject to § 311.034's requirements, could the legislature preclude judicial review of agency adjudications of private disputes by refusing to "waive" sovereign immunity altogether? At the very least, constitutional avoidance may justify treating essentially

4

private cases as not "against" the State if the state agency is a party only for procedural reasons.

Second, and assuming that the lawsuit *is* one against the State, it is not readily apparent that mandatory-venue provisions are properly characterized as "statutory prerequisites to suit." Perhaps they are, but the distinction between getting venue wrong versus, for example, failing to sue on time or to comply with administrative-exhaustion requirements seems potentially significant.

I address these issues in turn.

## A

Begin with the threshold question of whether Six Brothers's suit is in fact a "suit[] *against* a governmental entity." Tex. Gov't Code § 311.034 (emphasis added). On rehearing, Six Brothers reiterates its petition's assertion that its suit is against a governmental entity "in name only." The careful reader will notice, however, that the court of appeals never wrestled with Six Brothers's argument—and that is because Six Brothers never raised it before that court. Instead, when determining whether the mandatory-venue provision in Labor Code § 61.062(d) was a statutory prerequisite to suit, the court simply noted that § 61.062 generally provides a limited waiver to "the commission's sovereign immunity" and so assumed that Government Code § 311.034 applies. 679 S.W.3d at 749.

This Court rarely will be the initial one to consider a legal contention because we sit as a court of final review, not a court of first instance. Six Brothers's arguments nonetheless warrant mention, if only to assist future litigants, the lower courts, and this Court's eventual review.

Six Brothers's arguments contesting the court of appeals'

5

assumption that § 311.034 applies go like this: While the commission must be named as a defendant, it has no real skin in the game—the *only* "real parties in interest" are Six Brothers and Tomczak, so sovereign immunity is not implicated. The commission counters that it is a "real party" because it "has a very real interest in the outcome of this Payday Law litigation." And, it says, because "this is a suit regarding an agency action" and "is a traditional suit against a governmental entity," "sovereign immunity is implicated."

The statute, quoted in relevant part, helps assess these competing views:

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. . . . Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in *all suits against a governmental entity*.

Tex. Gov't Code § 311.034 (emphasis added). From the outset, the plain language of the statute captures "all suits against" governmental entities—not a specified subset or distinct portion, but *all*. If a petition in which the governmental entity must be a named party is *not* a "suit against a governmental entity," the obvious question is *why*?

Answering that question "lies in considering the statute's text in its legal context." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 736 (Tex. 2024) (Young, J., dissenting) (alterations incorporated) (quoting *Pulsifer v. United States*, 601 U.S. 124, 141 (2024)). The key statutory term to be understood in context is not "all," but "against." In other words, once we can ascertain a rule to determine if a case is a "suit against a governmental

6

entity," then the result is easy—*all* such suits are subject to § 311.034.

But is it clear that "against" means "if the governmental entity is a named party"? Section 311.034 does not simply state that rule, for one thing; it begins with a textually enacted rationale, which is "managing state fiscal matters." Proper textualist inquiry does not consider unstated or generalized legislative motivations, but when enacted as part of the text, a specifically stated purpose "can shed light on the meaning of the operative provisions that follow," though it "cannot give words and phrases of the dispositive text itself a meaning that they cannot bear." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 35, 218 (2012).

So the whole game reduces to determining what § 311.034 means by "against a governmental entity." It is possible that merely naming a governmental entity in any suit is enough—but, as I describe below, that position seems in tension with common sense, our precedents, and potentially even constitutional protections of private rights. For the moment, I assume that something more than merely having a governmental entity named as a "defendant" is required. But what else?

Perhaps the traditional common-law method of reasoning from the specific case before us in light of existing law might prove fruitful. Doing so in this case could start with examining the mechanics behind the Texas Payday Law to suss out whether, consistent with traditional understandings of everyday adversarial litigation against the government, Six Brothers's suit is "against" the commission. We can then look to the usual sovereign-immunity principles to uncover whether this "suit" implicates that doctrine.

7

The parties begin by disputing whether the commission is a "real party in interest" to Six Brothers's suit such that the litigation is truly "against" that governmental entity within the meaning of Government Code § 311.034. Six Brothers emphasizes, for example, that it "is not seeking damages from any governmental entity" and that "[n]o judgment in this case would require any governmental entity to pay anything to Six Brothers." According to the commission, however, the requirement that it be made a defendant to the suit, Tex. Lab. Code § 61.062(d), "indicates the Legislature's intent that the [c]ommission be a full participant in the litigation, not simply a nominal representative of the party [it] found for at the administrative level." If it "is merely a nominal party," the commission continues, "then the text of § 61.062(d) that requires [it] to be a separate independent defendant is meaningless and superfluous."

Notably, in casting itself as anything but a "nominal party," the commission argues again and again that the legislature has "*charged* [it] with defending . . . its final wage claim decisions," "*mandated*" as much, and "*require*[*d*] [it] to muster a defense" in suits like this one. (Emphasis added.) But it has not identified a single provision within the Payday Law *requiring it* (as opposed to simply permitting it) to defend its administrative decisions in the trial courts.

Analogously, a district judge is nominally the respondent (or defendant) in a mandamus action—but "the real party in interest" is always the litigant who has benefited from whatever action the judge took that prompted the other side to seek mandamus relief. The district judge must be named—and is authorized to formally respond—but as a neutral arbiter, the judge has no interest in the case other than the law being

properly applied. That interest is the same interest that the justices of the court of appeals have in this and any other case. They are not formally named as "respondents" when a petitioner seeks this Court's review. Their position, though, is functionally identical to the commission's when its determinations in a case like this one are challenged in litigation or to a district judge's when her orders are subject to a mandamus action.

True, the legislature has charged, mandated, and required the commission to "administer" and "adopt rules as necessary to implement" the Payday Law. Tex. Lab. Code § 61.002(a)(1)–(2). The legislature designed the Payday Law's administrative scheme to provide another outlet for claimants like Tomczak to vindicate their claims. *See id.* § 61.051(a) (providing that "[a]n employee who is not paid wages as prescribed by this chapter *may file* a wage claim with the commission" (emphasis added)). Once a claimant invokes the administrative scheme, the commission has the authority to order wage payment and assess administrative penalties. *See, e.g.*, *id.* §§ 61.052(a)(2), .053(a)–(b), .0613(a)(2)–(3). But the commission's adjudication is nothing inherently special—claims like Tomczak's are familiar in litigation, and his claim could have been initially filed in the normal course (*i.e.*, in any number of state courts) without ever involving the agency. *Cf. Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 88 (Tex. 2008) (explaining that by invoking the Payday Law's administrative scheme "to a final decision, [the claimant] forgoes his common law claims").

But *Tomczak* invoked the administrative process, leaving Six Brothers with no choice but to proceed "against" both Tomczak and the commission when it sought judicial review of the commission's decision.

9

Again, however, the commission points to no statutory mandate that it *defend* the suit (any more than a district judge named as a respondent in a mandamus action is mandated to defend her order). That may be different, however, where the commission has assessed administrative penalties against an employer, paid not to the employee but to the government. *See* Tex. Lab. Code § 61.053(a) (permitting penalties where "the commission determines that an employer acted in bad faith in not paying wages"). The commission at least has an interest in seeing that those funds are eventually deposited "in the unemployment compensation special administration fund," *see id.* § 61.065, and the legislature could have required the commission's presence as a defendant to protect that interest. (Whether such an action could be denied judicial review by denominating it a suit "against" the government and then purporting to withdraw sovereign immunity raises various other issues, of course.)

Yet the commission did not assess an administrative penalty here. So rather than to defend such a penalty, the commission's presence as a defendant here operates almost entirely to vindicate Six Brothers's or Tomczak's private interests. The Labor Code provides, for example, that once the commission reaches a final decision against the employer, the employer must "send the amount [owed to the wage claimant] to the commission for deposit in an interest-bearing escrow account" should the employer seek judicial review of the decision. *Id.* § 61.063(a)(2). If a court decides that "some or all of the [amount owed] is reduced or is not assessed," then "the commission shall remit the appropriate amount to the party . . . plus the interest accrued on the escrowed amount." *Id.* § 61.063(c). Thus, an entry of judgment against both a wage claimant and

the commission ensures that the commission remits the funds the employer (here, Six Brothers) escrowed with the commission. Conversely, an entry of judgment against the employer ensures that the commission "pay[s] to the claimant" (here, Tomczak) "wages collected . . . and any interest earned on those wages." *See id.* § 61.064.

In other words, this suit directly implicates Six Brothers's and Tomczak's rights and liabilities, but it affects the commission's only in an attenuated way at most. Specifically, the administrative decision below might have hinged on the commission's legal interpretation of the Payday Law, giving it an independent interest in participating in this litigation by defending that interpretation. Consistent with my reference above, Six Brothers counters that this interest "is no different than th[is] Court's interest in resolving this petition." True, the judges of this Court, the courts of appeals, and the trial courts vindicate their interests in defending their interpretations of constitutional provisions, statutes, or contracts by written decisions or judgments—just as I do here. But for a lower court to regard itself as now a co-appellee or co-respondent with the prevailing party as a case makes its journey to the higher courts—lodging objections, filing briefs, and participating in arguments—would be bizarre. That is why naming a judge in a mandamus action is not bringing suit "against" that person in the traditional sense.

All told, however, these competing arguments are, at best, underdeveloped and will benefit from the courts of appeals' consideration. While the commission no doubt has "a right to make [a] defense" in this litigation, the legislature's decision to mandate the commission's being named as a defendant could be interpreted either to *require* that the

11

commission muster a defense or to *ensure* that it is bound by the eventual judgment (and ultimately pays the prevailing party)—or both. *Cf. Am. Indem. Co. v. Fellbaum*, 263 S.W. 908, 910 (Tex. 1924) (concluding that an indemnity company, "though not technically a party," was nevertheless "a party to th[e] suit" and thus "bound by the judgment" because "[i]t had a right to make the defense, control the proceedings, [and] examine and cross-examine the witnesses" such that the suit was for all intents and purposes a suit "against" that company). The waters get even muddier as the parties turn to the broader statutory context—namely, whether Six Brothers's "suit" falls within the meaning of that term in Government Code § 311.034 because it implicates sovereign immunity.

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). There can be no dispute that a judgment for Six Brothers here would not implicate the State's fisc in the traditional sense. So, as Six Brothers notes, § 311.034's concern for "preserv[ing] the legislature's interest in managing *state fiscal matters* through the appropriations process" falls a bit flat. (Emphasis added.) Still, we have said that "[w]here the purpose of a proceeding against state officials is to control action of the State or subject it to liability, the suit is against the State and cannot be maintained without the consent of the Legislature." *Griffin v. Hawn*, 341 S.W.2d 151, 152 (Tex. 1960). In other words, these "suits" implicate sovereign immunity, whereas "suits to compel state officers to act within their official capacity do not attempt to subject the State to liability" and thus "do not implicate the sovereign-immunity doctrine." *IT-Davy*, 74 S.W.3d at 855–56 (noting that as opposed to

12

"certain declaratory-judgment actions against state officials," those "seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities" implicate sovereign immunity because they "attempt to control state action by imposing liability on the State"). In other words, our precedents suggest that the legislature was well aware that simply naming a state entity as a defendant did *not* legally transform the case into a suit "against" the State.

So where does Six Brothers's suit fall? As the commission notes, and as I have confirmed above, "if it is ultimately determined after judicial review that substantial evidence does not support the wage claim decision, [the commission] . . . is required to act, in remitting the appropriate amount to whom which judgment is rendered." Does that make Six Brothers's suit one to "control state action"? Or is it simply one that ultimately compels a state agency "to act within its official capacity"? Does the answer depend on whether the commission assessed an administrative penalty? Or is the analysis more holistic, demanding a review of the nature of the commission's defense before the trial court? It is no doubt conspicuous that Tomczak's counsel did not defend the trial court's judgment in either this Court or in the court of appeals—instead resting entirely on the commission's papers. These questions and quirks—and surely more unknown—are ripe for review in the lower courts as they confront cases like this one.

And yet here, Six Brothers did not advance these arguments or identify the quirks of the Payday Law that I have described. The arguments it now presents, however, provide a significant benefit to the State by airing out serious questions of administrative law, sovereign

13

immunity, and even potentially the private constitutional rights of individual litigants. The judiciary may find that it is necessary to give "against a governmental entity" a narrower reading to avoid serious constitutional questions. Such a reading may include only cases that genuinely involve governmental financial interests or that would require the government to take actions wholly collateral to adjudicating the rights of private parties. It is precisely because these questions are so important that the Court today properly denies the motion for rehearing as to this ground, thus allowing fuller consideration in future litigation, starting at the trial-court level.

## B

But that is not the only issue Six Brothers raises. It also argues that even if the suit is one "against" the commission, the mandatory-venue provision in Labor Code § 61.062(d) is not a "statutory prerequisite to suit," and thus Government Code § 311.034 does not impose any jurisdictional consequences for Six Brothers's failure to bring suit in Harris County. It distinguishes the provision from those that this Court has held were statutory prerequisites to suit in a trilogy of decisions interpreting § 311.034: *Chatha*, 381 S.W.3d 500; *City of Madisonville v. Sims*, 620 S.W.3d 375 (Tex. 2020); and *Texas State University v. Tanner*, 689 S.W.3d 292 (Tex. 2024). And it cites various lower-court opinions holding that various venue provisions, including § 61.062(d), are not jurisdictional. As I shall explain, however, this issue (like the one explored above) will benefit from further percolation among the courts of appeals.

Start with *Chatha*, which was the first of our cases to "constru[e] [§ 311.034's] reach." 381 S.W.3d at 510. In 2005, the legislature amended

14

§ 311.034 to make all "statutory prerequisites to suit[] jurisdictional as to governmental entities" (at least for suits "against" such entities). *Id.* at 511. The legislature, we said, was responding to a pair of our decisions that had overruled a longstanding rule establishing that "strict compliance with all statutory prerequisites is necessary to vest a trial court with jurisdiction." *Id.* at 510 (citing *Mingus v. Wadley*, 285 S.W. 1084, 1087 (Tex. 1926)). The legislature's actions put us back to our prior precedent holding that "where the cause of action and remedy for its enforcement are derived not from the common law but from statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Id.* at 512 (quoting *Mingus*, 285 S.W. at 1087). We found the amended § 311.034's mandate to be "clear: In a statutory cause of action against a governmental entity, the failure to adhere to the statute's mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit." *Id.*

Turning to the provision at issue, *Chatha* held that the 180-day filing requirement for bringing discrimination claims under Chapter 21 of the Labor Code was "a mandatory statutory requirement that must be complied with before filing suit," meaning it was "a statutory prerequisite to suit under [§] 311.034." *Id.* at 503 (citing Tex. Lab. Code § 21.202). Key to the Court's decision was that "the term 'statutory *pre*requisite' refer[red] to statutory provisions that are mandatory and must be accomplished *prior to* filing suit." *Id.* at 512 (emphasis added). Because the claimant failed to "file a complaint" with the agency within 180 days—*i.e.*, before she filed suit—the Court held "that her suit [was] jurisdictionally barred by [§] 311.034." *Id.* at 503. The Court concluded

15

by providing this guidance:

> [A] statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity.

*Id.* at 515.

*Chatha*, we have explained, was one example of an "administrative" prerequisite to suit, whereas we confronted a "procedural" prerequisite about a decade later in *Sims*. The Court there held that the Whistleblower Act's ninety-day filing deadline (a "procedural" provision) was "a statutory prerequisite to suit" under § 311.034. 620 S.W.3d at 377, 380 (noting that *Chatha* concerned an "administrative" prerequisite to suit). We observed that "an employee with a Whistleblower Act claim must strictly abide by the procedural limitations set out in the Act to obtain relief." *Id.* at 379. "That include[d] the statute of limitations, which state[d] that an employee with a Whistleblower Act claim '*must* sue' within ninety days to obtain relief." *Id.* (quoting Tex. Gov't Code § 554.005). What clued us in was that "[t]he term 'must' create[d] a condition precedent," so "a claim that fail[ed] to meet that deadline may properly be disposed of by a jurisdictional plea." *Id.* (citing Tex. Gov't Code § 311.016(3) ("'Must' creates or recognizes a condition precedent.")).

Rounding out the trilogy is *Tanner*, where we held that timely service of process was a statutory prerequisite to suit. 689 S.W.3d at 296. The case was an offshoot of *Sims*—a "procedural" prerequisite involving "bringing suit within limitations." *Id.* We acknowledged that *Chatha* contemplated actions that took place purely "'before the lawsuit [was] filed'" but that *Chatha*'s phrasing "was incomplete." *Id.* at 300 (quoting

16

*Chatha*, 381 S.W.3d at 512).  True, "[s]ervice comes *after* filing," and "one could hardly expect it to be done *before* filing," but "while service follows filing, both are prerequisites to 'bringing' the suit."  *Id.* (quoting the statutory phrase "bring suit" in Tex. Civ. Prac. & Rem. Code § 16.003(a)).  Put differently, "[t]he suit is not 'brought,' and the statute of limitations is not satisfied, until the plaintiff achieves *both* steps."  *Id.*

With this backdrop, Six Brothers asks this Court to return to § 311.034 and distinguish the mandatory-venue provision in Labor Code § 61.062(d) from those we confronted in *Chatha*, *Sims*, and *Tanner*.  To be sure, § 61.062(d) does not fit neatly within the classes of provisions we have described as "statutory prerequisites to suit"—namely, *administrative* or *procedural* provisions like filing deadlines.  Indeed, Six Brothers identifies several courts of appeals that, it says, "have held that venue is not a jurisdictional prerequisite to suit."  And yet, upon closer inspection, it is not clear whether the cases Six Brothers cites remain good law following the legislature's amendment to Government Code § 311.034 or the *Chatha* trilogy.  The timing of the authorities alone undermines Six Brothers's argument that "[t]his issue has received extensive analysis in the lower courts, making further percolation unnecessary."

Take first the decisions Six Brothers cites that predate the legislature's decision to amend Government Code § 311.034.  *E.g., Tex. Emps. Ins. Ass'n v. Singleton*, 616 S.W.2d 232, 233–35 (Tex. Civ. App.— San Antonio 1980, writ ref'd n.r.e.) (distinguishing *Mingus* and holding that venue provisions providing that a suit "may be brought either in the county where the injury occurred or in the county of the claimant's residence" were "merely venue provisions," not jurisdictional); *State v.*

17

*Pounds*, 525 S.W.2d 547, 548 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.) (holding that a State Bar Act provision providing that "[n]o disbarment proceedings shall be instituted against any attorney except in the District Court located in the county of said attorney's residence" was not a "jurisdictional statute" and "relate[d] only to venue"); *see also Wichita County v. Hart*, 917 S.W.2d 779, 782–83 (Tex. 1996) (finding "no indication that the Legislature intended the Whistleblower Act's venue provision to be jurisdictional"). Perhaps confronted with this change in law, to say nothing of our decisions in *Chatha*, *Sims*, and *Tanner*, the San Antonio and Amarillo Courts of Appeals may change course and hold that the venue provisions at issue in *Singleton* and *Pounds* are now more properly characterized as "statutory prerequisites to suit" with statutorily imposed jurisdictional consequences.

Six Brothers's repeated references to cases from before § 311.034's enactment that describe venue as not "jurisdictional" are by themselves meaningless. This contention is not *wrong*, exactly; in private litigation, venue errors like this are *not* jurisdictional. But the question is whether such an error has *become* jurisdictional (only in suits against the government) because of § 311.034. For that reason, it is difficult to find any case persuasive in this discrete context if it does not engage with the new § 311.034 or the *Chatha* line of cases. *See, e.g.*, *In re C.H.*, No. 13-17-00544-CV, 2019 WL 5251145, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 17, 2019, no pet.) (holding that a provision stating that "the petition must be filed in a Travis County district court" was a "mandatory venue provision" that was not "jurisdictional" (citation omitted)).

Take next the principal case upon which Six Brothers relies, which

18

suffers from the same bugs as *Singleton* and *Pounds* but at least pertains to the mandatory-venue provision at issue here. In *Kshatrya v. Texas Workforce Commission*, the court of appeals held that the trial court erred in concluding that the "failure to file suit in the county mandated by [Labor Code § 61.062(d)] deprived [it] of jurisdiction." 97 S.W.3d 825, 827 (Tex. App.—Dallas 2003, no pet.). Like the commission here, the commission there "claimed it had not waived its immunity to be sued because [the plaintiff] did not bring suit in the county in which he lived . . . as required by" § 61.062(d). *Id.* at 828. The court of appeals disagreed, concluding that "[t]his mandatory venue statute instructs the appealing party where to physically file suit, but there is nothing in the statutory language suggesting this is a jurisdictional prerequisite." *Id.* at 831. It ultimately held that "[b]ecause venue is not jurisdictional, the trial judge erred in granting the pleas to the jurisdiction in this case." *Id.* at 832.

Six Brothers urges this Court to follow *Kshatrya* even after the legislature's amendment to § 311.034 and our decisions in *Chatha, Sims*, and *Tanner*. True, the Dallas Court of Appeals appears to have at least flaggingly done so, as has at least one other court. *See Tex. Underground, Inc. v. Tex. Workforce Comm'n*, 335 S.W.3d 670, 674 n.1 (Tex. App.—Dallas 2011, no pet.) (reiterating *Kshatrya*'s holding that § 61.062(d) "is not a jurisdictional requirement"); *Gutierrez v. Gutierrez*, No. 05-14-00803-CV, 2016 WL 1242193, at *1 (Tex. App.—Dallas Mar. 30, 2016, no pet.) (holding that Family Code § 103.001 "is not jurisdictional" but rather "is a venue statute" like Labor Code § 61.062(d) (citing *Kshatrya*, 97 S.W.3d at 832)); *In re J.J.J.*, No. 14-08-01015-CV, 2009 WL 4613715, at *3 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, no pet.) (relying on

19

*Kshatrya* for the proposition that "venue is not jurisdictional").

Again, however, cases not involving the government are not instructive, and cases in which the argument based on § 311.034 was not pressed in the court of appeals can hardly constitute precedents about how venue statutes fare under § 311.034. These cases are unhelpful because absent in any of them is a discussion of § 311.034 *or* this Court's precedents. *Contra Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (explaining that "three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court *unless* a higher authority has superseded that prior decision" (emphasis added)).

The commission, for its part, identifies one post-amendment and post-*Chatha* case in which the court of appeals squarely held that a mandatory-venue provision *was* jurisdictional. *See Scott v. Presidio ISD*, 266 S.W.3d 531, 535–36 (Tex. App.—Austin 2008) (holding that the venue requirement under the Education Code was a statutory prerequisite to suit under § 311.034 and that failure to comply with the venue provision thus deprived the district court of jurisdiction), *rev'd on other grounds*, 309 S.W.3d 927 (Tex. 2010). The commission may be correct that under § 61.062(d), "a suit must be brought in the correct county," and "only after that has happened can it be properly filed." In other words, even if venue is "typically capable of being satisfied after filing suit," meaning it is not "typically" a "statutory *pre*requisite to suit," the court of appeals may have properly held that the mandatory-venue provision here "must be satisfied before the jurisdictional filing deadline to confer jurisdiction on a court in a suit against a governmental entity."

This is not to say that there are not strong reasons to think that

Six Brothers may be right. Venue is at least arguably quite different for § 311.034's purposes from the kinds of requirements considered in *Chatha*, *Sims*, and *Tanner*. Indeed, as one civil-procedure textbook describes them, "[v]enue requirements exist to ensure that a case is litigated in a court that is conveniently located and has some connection to the lawsuit or to one or both of the parties." Joseph W. Glannon et al., *Civil Procedure* 368–69 (3d ed. 2017). One may readily see how the legislature might require suits like Six Brothers's to be filed in the county of Tomczak's residence, as that would have likely been Tomczak's venue of choice had he not resorted to administrative proceedings. And unlike the administrative and procedural provisions at issue in the *Chatha* trilogy, venue is—at least traditionally—readily remediable by the defendant's moving in the trial court for another, more convenient venue (say, where witnesses and evidence are located). Should he fail to do so, our Rules of Civil Procedure set forth how he will have waived his right to object to an allegedly improper venue. *See* Tex. R. Civ. P. 86.1. All this to say, § 61.062(d) may be "a garden-variety venue provision," one "which resembles many other venue provisions, none of which are thought to alter the jurisdiction of any court." *Paxton v. Am. Oversight*, \_\_\_ S.W.3d \_\_\_, 2025 WL 1793117, at \*7 (Tex. June 27, 2025) (footnote omitted).

But the potential for a vibrant debate is a good reason for this Court to deny review, not to grant it. This Court should rarely if ever be on the frontlines of a legal issue that affects litigation across Texas in a host of contexts. Instead, parties should raise it in the lower courts and convert the *potential* for debate into its *reality*. At that point, and especially if division arises, this Court will properly play its constitutional

21

function of providing an authoritative statement about the requirements of the law. The Court is right to await a future case where the key arguments will both be made to and explored by our colleagues on the lower courts.

### III

This is a small-dollar suit with Texas-sized implications. Having gone through the administrative process and lost, Six Brothers deserved an opportunity to air its dispute before a state tribunal. But having filed in the wrong venue, it lost that opportunity—forever. An untold number of employers and employees may await a similar fate, and Six Brothers rightly wonders whether the court of appeals' construction of the mandatory-venue provision at issue here insulates the administrative state from meaningful judicial review. For this reason, I am confident that the Court will receive further opportunities to address these issues in the fullness of time. On that understanding, I concur.

Evan A. Young
Justice

**OPINION FILED:** July 18, 2025

22