# Supreme Court of Texas

No. 23-0593

Cockrell Investment Partners, L.P.,

*Petitioner*,

v.

Middle Pecos Groundwater Conservation District; Ty Edwards, in
His Official Capacity as General Manager of the Middle Pecos
Groundwater Conservation District; and Fort Stockton
Holdings, L.P.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

*~ consolidated for oral argument with ~*

No. 23-0742

Cockrell Investment Partners, L.P.,

*Petitioner*,

v.

Middle Pecos Groundwater Conservation District and Its Board President Jerry McGuairt; Republic Water Company of Texas, LLC; and Fort Stockton Holdings, L.P.

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued November 4, 2025**

JUSTICE SULLIVAN delivered the opinion of the Court.

Cockrell Investment Partners, L.P. twice sought party status in some administrative proceedings about groundwater-production permits before the Middle Pecos Groundwater Conservation District. The District refused both party-status requests, and Cockrell sought judicial review each time. The district court granted the District's plea to the jurisdiction in one case, and granted the District's summary-judgment motion in the other. The court of appeals affirmed in both cases, holding that Cockrell hadn't exhausted its administrative remedies because it sued before allowing 90 days to elapse from the filing of its

reconsideration requests with the District. But that exhaustion requirement applies only to a permit applicant or a party to the administrative proceeding. Cockrell wasn't a party—that's why it sued the District in the first place—so we reverse and remand in both cases.

# I

Cockrell owns a pecan orchard in Pecos County. To irrigate its trees, Cockrell has several wells that pump water out of the Edwards–Trinity Aquifer. Cockrell's neighbor, Fort Stockton Holdings, L.P. (FSH), did the same thing for many years to irrigate its alfalfa and other crops. More recently, FSH started selling that water to the cities of Midland, Abilene, and San Angelo.

To pump water from the Aquifer, a landowner must have a groundwater-production permit from the District. Each landowner's permit caps how much water it can produce each year, generally based on factors like the size of the surface tract and the amount of space between wells. So when FSH wanted to start selling its share of Aquifer water to three of West Texas's largest cities, it applied to the District to significantly increase the amount of water its permits allowed it to pump. Water is a scarce resource in the Permian Basin, and the Aquifer's supply is finite, so Cockrell objected to FSH's plans. Since 2009, FSH has initiated four administrative proceedings before the District to increase the amount of water it can pump under its permits.

In 2009, FSH applied to the District to expand its existing water permit. That "historic and existing use" permit authorized FSH to pump 47,000 acre-feet of water per year from the Aquifer, which is the amount of water it had historically used. FSH sought to double the

production limit of that permit and pump an additional 47,000 acre-feet of water per year.

Cockrell didn't seek party status or otherwise participate in this permitting proceeding before the District, which eventually denied the permit application. FSH sued the District, challenging the denial of the application. FSH lost in the district court and appealed.

While its case was pending in the court of appeals, FSH leased its groundwater rights to Republic Water Company of Texas, LLC. Republic applied to the District for a new permit to pump water from the same tract of land from which FSH had previously sought to double its production. Republic sought a permit to allow it to pump 28,400 acre-feet of water per year, roughly half the amount of additional water that FSH had sought permission to pump. Cockrell obtained party status in the administrative proceeding concerning Republic's application.

The District determined that Republic's application wasn't administratively complete, so Republic sued the District. Republic and FSH eventually settled their respective lawsuits against the District. Under the settlement agreement:

(1)  Republic would withdraw its application;

(2)  FSH would amend its 2009 application to reduce the amount of additional water it was seeking by 19,000 acre-feet (from 47,000 to 28,000 acre-feet);

(3)  FSH would amend its historic-and-existing-use permit to surrender 28,000 (of its existing 47,000) acre-feet of water, retaining 19,000 acre-feet; and

(4)  the District would approve FSH's amended applications.

4

In 2017, FSH asked the District to amend the 2009 application per the settlement agreement. Relevant here, the settlement agreement treated the 2017 amendment as a continuation of the 2009 proceeding.[1] Cockrell sought party status in the 2017 proceeding. The District determined that, because the amendment was a *continuation* of the 2009 proceeding, the deadline to seek party status had passed seven years earlier. And because Cockrell had long since missed that deadline, the District denied Cockrell party status. The District then approved FSH's two applications.

FSH's 2017 permit had a three-year term that expired in 2020. Shortly before the expiration date, FSH applied to renew the permit. Cockrell again sought party status. The District neither granted nor denied the request—it simply refused to act—and approved FSH's renewal application.

Each permit application sparked a new lawsuit. So far, the court of appeals has decided four appeals, and has abated a fifth pending our decision here. Two of those appeals are now before us: *Cockrell I* and *Cockrell II*.

*Cockrell I*: In response to the District's denial of party status in the 2017 proceeding, Cockrell sought judicial review. To exhaust its

---

[1] Cockrell argues that the 2017 proceeding couldn't have been a continuation of the 2009 proceeding because "the 2009 Application had been finally disposed of by the [Groundwater] District." But under the settlement agreement, the court of appeals vacated the district court's judgment in FSH's judicial-review suit and remanded directly to the District (skipping the district court). *Fort Stockton Holdings, L.P. v. Middle Pecos Groundwater Conservation Dist.*, No. 08-15-00382-CV, 2017 WL 2570934, at *1 (Tex. App.—El Paso June 14, 2017, no pet.).

administrative remedies, Cockrell filed a request for reconsideration. The District didn't act on that request. Believing that its request was overruled by operation of law after 45 days under Rule 4.9 of the District's local rules, Cockrell waited 74 days after submitting the request to seek judicial review of the denial of party status. *Cockrell I*, 677 S.W.3d 727, 741 (Tex. App.—El Paso 2023). Relevant here, Cockrell brought a claim under Section 36.251 of the Water Code.

In 2020, the District and FSH (which had intervened to defend the denial of party status) filed pleas to the jurisdiction, asserting governmental immunity. The district court granted the pleas and dismissed the suit. Cockrell appealed, and the court of appeals affirmed.

The court of appeals held that the District hadn't denied Cockrell's request by operation of law because the request wasn't governed by Rule 4.9's 45-day reconsideration period, but rather by Section 36.412's 90-day rehearing period. *Id.* at 741–42. As a result, the court concluded that Cockrell had failed to exhaust its remedies, such that the District retained governmental immunity. *Id.* at 742–43. Cockrell petitioned us for review.

*Cockrell II*: When the District refused to act on Cockrell's request for party status in the 2020 renewal proceeding, Cockrell again sought judicial review. To exhaust its administrative remedies, Cockrell did the same thing as the last time: It requested reconsideration, along with findings of fact. The District didn't act on either request. Continuing to believe that the reconsideration request was subject to Rule 4.9's 45-day automatic-denial provision, Cockrell waited 67 days to seek judicial review.

6

Cockrell again brought a claim under Section 36.251, and the District and FSH again filed pleas to the jurisdiction. For reasons that are unclear, the district court denied the pleas but then tossed the case on summary judgment. Cockrell appealed.

The court of appeals again affirmed, holding that Cockrell's request for reconsideration was governed not by Rule 4.9's 45-day timeline, but instead by Section 36.412's 90-day timeline. *Cockrell II*, 676 S.W.3d 677, 685–86 (Tex. App.—El Paso 2023). Because Cockrell waited only 67 days before suing, the court held, it again failed to exhaust its administrative remedies. *Id.* Cockrell again petitioned us for review. We granted both petitions and consolidated them for oral argument.

## II

Our analysis begins and ends with whether Section 36.251 of the Water Code waives the District's immunity from this suit. To prove that immunity is waived, Cockrell must satisfy all three of the statute's requirements. *First*, Cockrell must be "affected by and dissatisfied with" the District's "rule or order." Tex. Water Code § 36.251(a). *Second*, if the administrative hearing was contested, Cockrell must have been either an "applicant" or a "part[y]" to the hearing, or else Cockrell must be appealing a rule or order other than the "decision on the application." *Id.* § 36.251(b). *Third*, Cockrell must have waited to file suit until "all administrative appeals to the district [were] final." *Id.* § 36.251(c). We conclude that Cockrell met all three requirements necessary to invoke Section 36.251's waiver of immunity.

Because the District is a political subdivision of the State, it's ordinarily immune from suit. The District's immunity is derivative of

7

the State's sovereign immunity, which Texas has by virtue of the inviolable sovereignty inherent in its statehood. *See, e.g.*, *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016). Our Constitution empowers the Legislature to decide when to expend the People's hard-earned tax dollars defending against litigation.

As a result, Cockrell can't sue the District without demonstrating that "the legislature, as the branch of government constitutionally empowered to manage the State's financial affairs, has waived immunity by statute." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023). We've repeatedly held that the Legislature does so only through clear statements, construing putative statutory waivers of immunity in favor of its retention. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512–13 (Tex. 2012). Because "sovereign immunity deprives courts of subject-matter jurisdiction," *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012), we can't adjudicate the merits of this case unless we first determine that the Legislature has clearly and unambiguously waived the District's immunity, *see Rattray*, 662 S.W.3d at 867.

Here, the Legislature has *conditionally* done so. Section 36.251 of the Water Code provides a limited waiver of immunity that a litigant may invoke only if it meets three requirements. We dispose of the first two requirements in short order, concluding that Cockrell has satisfied them, then turn our attention to the heart of the parties' dispute: the finality requirement.

## A

The first requirement to establish a waiver of immunity under Section 36.251 is that Cockrell must be "affected by and dissatisfied

with" a "rule or order" issued by the District. Tex. Water Code § 36.251(a). Subsection (a) says that:

> A person, firm, corporation, or association of persons affected by and dissatisfied with any rule or order made by a district, including an appeal of a decision on a permit application, is entitled to file a suit against the district or its directors to challenge the validity of the law, rule, or order.

*Id.*; *see also Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 399 n.37 (Tex. 2009).

This waiver allows any "person . . . dissatisfied" with the District's order to sue that political subdivision. For present purposes, Cockrell counts as a "person." *See* Tex. Gov't Code § 311.005(2) ("'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity."). And it's clearly dissatisfied with the District's refusal to grant it party status. Because the statute uses the term "person," not "party," it's irrelevant that Cockrell was unsuccessful in its attempt to obtain party status. After all, as the U.S. Supreme Court recently observed, "a 'party' aggrieved is not synonymous with a 'person' aggrieved," *NRC v. Texas*, 605 U.S. 665, 675 (2025)—or as here, a "person" *dissatisfied*. Section 36.251(a) uses the latter term, and Cockrell satisfies it.

**B**

The second requirement applies only if the District issued the permit after a *contested* hearing. Tex. Water Code § 36.251(b). If the hearing were contested, Cockrell would have to be either the applicant or a party to the hearing in order to appeal the "decision on the [permit] application." *Id.*

9

Subsection (b) operates as a carve-out. Though Subsection (a) allows a "person" to sue the District over any "rule or order," Subsection (b) limits the class of persons and the class of orders that can be challenged in certain cases. Specifically, Subsection (b) says that "[o]nly the district, the applicant, and parties to a contested case hearing may participate in an appeal of a decision on the application that was the subject of that contested case hearing." *Id.*

Here, the parties dispute whether the relevant hearings were contested. We don't need to decide that issue. Even if Subsection (b)'s requirement applies, Cockrell satisfies it. Although Cockrell is outside the class of persons (*i.e.*, "the district, the applicant, and parties") who can challenge "a decision on the application," the District's decision to grant FSH's permit application isn't what Cockrell is challenging. Rather, Cockrell is challenging the denial of party status. Subsection (b) imposes no limitation on who can sue the District to challenge a rule or order *other than* the decision on the permit application. *Id.* Subsection (a) allows a person wide latitude to challenge any "rule or order" and expressly notes that "an appeal of a decision on a permit application" is only one type of "rule or order made by a district." *Id.*

The District argues that the distinction between the permit itself and the denial of party status is a "trojan horse" because "the *sole reason* Cockrell wants party status is to contest the District's decision on FSH's [a]pplication." True, but irrelevant. A non-party's purpose in seeking party status doesn't impact whether Section 36.251 waives immunity, any more than the Legislature's purpose in passing a statute impacts what it means. All that matters is *what* Cockrell is challenging, not *why*.

10

Because Cockrell isn't challenging the District's actual permitting decision—just the District's order denying it party status—Section 36.251's second requirement poses no barrier to Cockrell's suit.

## C

The third requirement to establish a waiver of immunity is that Cockrell must have waited to file suit until "all administrative appeals to the district [were] final." Tex. Water Code § 36.251(c). This is the crux of the parties' dispute. But unlike that of the first two requirements, the analytical framework for determining whether Cockrell satisfied Subsection (c)'s finality requirement isn't self-contained within Section 36.251.

To render the District's decision "final," Cockrell was required to exhaust all of its administrative remedies. *Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 904 (Tex. 2024). Under the exhaustion-of-remedies doctrine, an aggrieved party generally must seek all available relief from an agency before seeking any relief from a court. *Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 194 (Tex. 2024). Exhaustion is a statutory prerequisite to suit that has jurisdictional implications "in all suits against a governmental entity." Tex. Gov't Code § 311.034.

The exhaustion requirement at issue here is that a litigant must wait a certain amount of time after it requests rehearing of a decision before it files suit. *See* Tex. Water Code § 36.412(e); *see also* Middle Pecos Groundwater Conservation Dist. Rule 4.9. This requirement ensures that the District has enough time to decide whether to grant rehearing before it spends taxpayer dollars hiring lawyers to defend a

11

lawsuit. If the District doesn't reach a decision within the rehearing period, then the request for rehearing is denied by operation of law. Tex. Water Code § 36.412(e); *see also* Middle Pecos Groundwater Conservation Dist. Rule 4.9. Once the District denies rehearing (either by order or by operation of law), a litigant's administrative remedies are considered "exhausted," satisfying Section 36.251(c)'s finality requirement. *See* Tex. Gov't Code § 311.034.

Here, the parties disagree about how long Cockrell needed to wait after requesting reconsideration before it could sue. Section 36.412 and Rule 4.9 specify different periods of time that a litigant must wait after requesting rehearing before the District's decision becomes "final." The preferred source of FSH and the District, Section 36.412, makes a decision final 90 days after the rehearing request. But Cockrell's preferred source, Rule 4.9 of the District's local rules, makes the decision final after only 45 days. Cockrell waited 74 days and 67 days, respectively, after filing its two rehearing requests before filing suit.

**1**

Section 36.413 of the Water Code says that the District's decision "on a permit or permit amendment application is final" on the date the District "denies the request for rehearing." Tex. Water Code § 36.413(a). Section 36.412, in turn, governs how to request rehearing.

Under Section 36.412, an applicant or a party may "administratively appeal a decision of the board on a permit or permit amendment application." *Id.* § 36.412(a).[2] To do so, the party must

---

[2] Cockrell's suits are governed by the version of Section 36.412 that was in effect when they were filed. Act of May 20, 2015, 84th Leg., R.S., ch. 405,

request findings of fact and conclusions of law and, after the District issues them, the party may "request a rehearing." *Id.* § 36.412(a)–(c). If the District doesn't "grant or deny [the] request for rehearing" within 90 days, then the request is denied by operation of law. Tex. Water Code § 36.412(e). All parties agree that if Sections 36.412 and 36.413 apply, then Cockrell didn't exhaust its administrative remedies because it sued before the 90-day rehearing period had elapsed. For two reasons, though, those sections don't apply here.

*First*, Sections 36.412 and 36.413 apply to the appeal of only a decision "on a permit." *Id.* §§ 36.412(a), .413(a). But, as we said earlier, Cockrell isn't challenging the District's decision to grant FSH's permit; it's challenging the denial of party status.

If Cockrell were challenging the permitting decision, as FSH and the District argue it was, then the District would've been statutorily obligated to make findings of fact and conclusions of law "regarding a decision" upon receiving Cockrell's request. *See id.* § 36.412(b). But in *Cockrell II*, the District didn't respond to Cockrell's request for findings and conclusions. So either the District is right that Section 36.412 applies, in which case the District itself violated the statute, or the District is wrong, in which case Cockrell wasn't subject to the 90-day rehearing provision. The correct answer is the latter.

*Second*, Sections 36.412 and 36.413 apply only to an applicant or a party. Tex. Water Code §§ 36.412(a), (a-1), (b-1), .413(b)–(c). But

§ 7, 2015 Tex. Gen. Laws 1638, 1640. The Legislature has since made non-substantive revisions to that section, including re-lettering some of its subsections. The revisions don't impact our analysis, but we cite the subsections by their current letters.

13

everyone agrees that Cockrell was neither the permit applicant nor a party to the administrative proceeding. And for good reason.

The U.S. Supreme Court held last summer, after the close of briefing in this case, that obtaining party status in a licensing proceeding under the federal Hobbs Act requires successful intervention. *NRC*, 605 U.S. at 676. So if an agency "fails to 'admit' someone 'as a party,' that person or entity is not a party." *Id.* at 676–77.[3] The same reasoning holds true for groundwater permitting proceedings under the Water Code.

Because Cockrell wasn't an applicant or party, it didn't have to follow Section 36.412's procedures to exhaust its administrative remedies. In contrast, an applicant or party not just can, but *must*, use Section 36.412 to exhaust its remedies before suing the District. Tex. Water Code § 36.413(b).

---

[3] Cockrell wouldn't be a party to the District's proceeding under either the majority's view or the dissent's view in *NRC*. The majority held that because Texas hadn't intervened in the Nuclear Regulatory Commission's licensing proceeding for storage of spent nuclear fuel, it wasn't a "party aggrieved" and couldn't challenge that federal agency's decision. 605 U.S. at 676. If NRC's licensing proceeding consisted only of an administrative hearing, then the Court's decision might've been unanimous. But unlike most licensing proceedings, NRC's proceedings have multiple components, one of which is an environmental review. *Id.* at 694 (Gorsuch, J., dissenting). That component requires NRC to go through the notice-and-comment process to assess potential environmental impacts before NRC can issue a nuclear-fuel-storage license. *Id.* Importantly, in "'administrative proceedings' contemplating 'notice-and-comment,' lower courts have long said that 'commenting' qualifies an individual as a 'party' for purposes of the Hobbs Act." *Id.* at 708. As Justice Gorsuch saw things in dissent, Texas's having commented on the environmental review made it a "party" to that component and, consequently, to the "proceeding." *Id.* In this case, the District has no such notice-and-comment portion of its permitting proceeding. So even under Justice Gorsuch's view, Cockrell wasn't a party.

14

Though Sections 36.412 and 36.413 say that they apply only to applicants and parties, the District argues that they also apply to non-parties because "Section 36.402 makes clear that [Chapter 36] governs the entire hearing process for permit applications." That's atextual. Section 36.402 says only that Sections 36.412 and 36.413 apply "to the notice and hearing process used by a district for permit and permit amendment applications for which a hearing is required." *Id.* § 36.402. That section does *not* enlarge the set of persons or decisions to which Sections 36.412 and 36.413 apply. *Id.*

Though it might simplify the analysis if Chapter 36's procedures governed every type of appeal from one of the District's rules or orders—or even just because the Legislature might've *assumed* that Chapter 36's procedures were categorical—that doesn't make it so. Besides, the procedures *can't* be all-encompassing because Section 36.415(a) expressly says that the District can "adopt notice and hearing procedures in addition to those provided by" Chapter 36. *Id.* § 36.415(a). It makes sense for the Legislature to give the District gap-filling authority only if there are gaps to fill. It's irrelevant that Chapter 36 doesn't enumerate a set of procedures for obtaining finality of a denial of party status. The District filled that gap with Rule 4.9.

**2**

Rule 4.9 provides a rehearing process for "any matter not covered under any other section of these rules." Middle Pecos Groundwater Conservation Dist. Rule 4.9. Because no other rule governs motions for reconsideration of the denial of party status, Rule 4.9 applies. Under that rule, "a request for reconsideration may be filed with the District

15

within 20 (twenty) calendar days of the date of the decision." *Id.* Rule 4.9 doesn't limit the ability to seek reconsideration to any particular person—whether it be an applicant, a party, or another person—so we read the rule to allow, at minimum, the person who made an underlying request to request reconsideration of the denial of that request.

That means Cockrell could request reconsideration of the District's denial of party status. Cockrell properly did so under Rule 4.9's procedures. The District implicitly denied Cockrell's underlying requests for party status when it issued its final decisions granting FSH's permit applications. After all, the final decisions effectively denied as moot Cockrell's outstanding requests for intervention. *Cf. Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634–35 (Tex. 2021). So Cockrell's deadline to request rehearing on the denial of party status was 20 days after the District granted each of FSH's permits. Cockrell timely submitted its requests. The District granted the 2017 permit on July 18, 2017, and Cockrell requested rehearing 10 days later. Three years later, on June 16, 2020, the District granted the 2020 permit.[4] Exactly 20 days later, Cockrell requested reconsideration.

Under Rule 4.9, if the District neither grants nor denies a request for reconsideration, then the request is denied by operation of law after

---

[4] Cockrell argues, and the District and FSH don't contest, that the permit was approved on June 16 when the District failed to overrule the general manager's decision to grant FSH's permit, rather than on May 22 when the general manager made the decision. We assume without deciding that this is correct and that Cockrell's request for reconsideration was therefore timely.

16

45 days.[5]  Middle Pecos Groundwater Conservation Dist. Rule 4.9.  The District didn't act on Cockrell's requests, so they were denied on September 11, 2017, and August 20, 2020, respectively.  Cockrell waited until after these dates to sue, so it exhausted its administrative remedies.  Thus, the District's decisions were final when Cockrell sought to invoke Section 36.251's limited waiver of immunity.  Cockrell therefore satisfied Section 36.251's third requirement, too.

*   *   *

Because Cockrell satisfied all three requirements under Section 36.251, it properly invoked that section's waiver of immunity.  The court of appeals erred in concluding otherwise based on its incorrect application of the exhaustion requirements in Sections 36.412 and 36.413.

### III

We decide this appeal on the jurisdictional issue of exhaustion of remedies, so we don't need to first resolve the other issues that the District and FSH argue implicate our jurisdiction.  Indeed, we decline to do so today because the court of appeals didn't reach them.

Although we must resolve all jurisdictional questions before we reach any argument on the merits, there's no mandatory "sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *see Rattray*, 662 S.W.3d at 868–69.  That is, we "may analyze

---

[5] In *Cockrell I*, the court of appeals incorrectly explained that "the rule in effect at the relevant time provided that a request for reconsideration was deemed overruled by operation of law after 90 days, not 45 days as is provided by the later-adopted rule."  677 S.W.3d at 741–42.  But the court of appeals cited the 2014 rule (which had a 90-day rehearing period), not the 2016 rule (which had a 45-day period), which was in effect when Cockrell requested rehearing (and later sued the District) in 2017.

arguments that question our jurisdiction in any order." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015). But we needn't be the first court to analyze FSH's and the District's arguments. This Court is one of review—not first view. *Rattray*, 662 S.W.3d at 870. We decline to "decide in the first instance issues not decided below." *Id.* (internal quotation marks omitted).

Accordingly, we reverse the judgments of the court of appeals and remand the cases to that court to address the District's and FSH's remaining jurisdictional arguments and, if the court determines that it has jurisdiction, the merits of Cockrell's appeals.

James P. Sullivan
Justice

**OPINION DELIVERED:** March 13, 2026

18